**Alvis A. SWANSON, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 90–1332.**

United States Court of Veterans Appeals.

Jan. 29, 1993.

William A. L'Esperance, Albuquerque, NM, was on the pleadings, for appellant.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and John D. McNamee, Washington, DC, were on the brief, for appellee.

Before KRAMER, IVERS, and STEINBERG, Associate Judges.

IVERS, Associate Judge:

On September 17, 1991, the Court, by a single-judge memorandum decision, summarily affirmed the July 20, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for a hearing disorder. 1 Vet.App. 553. On October 23, 1991, appellant's motion for rehearing, which was deemed a motion for reconsideration, was denied. 1 Vet.App. 619 On November 12, 1991, appellant filed a motion for review by a panel. For the reasons discussed below, appellant's motion for review is granted. The memorandum decision is vacated, and the claim is remanded to the BVA for readjudication consistent with this opinion.

## I. Background

Appellant served in the United States Army from November 25, 1941, to September 30, 1945. R. at 8. Upon enlistment, appellant's hearing was recorded in both ears as "20/20." R. at 10. On January 15, 1942, appellant had a foreign body removed from his left eye. R. at 21. An Extract from Miscellaneous Records concerning Medical Treatment reveals that appellant received treatment for burn injuries in two separate incidents, one from December 1, 1943, to February 29, 1944, and another from January 1, 1945, to January 31, 1945. R. at 30. The latter incident involved a first-degree powder burn to appellant's face and a second-degree powder burn on both of his hands. R. at 23. In January 1944, appellant dropped a mortar base plate that struck his right knee. R. at 29. There is no service record showing treatment for hearing loss. However, there is a notation that appellant served in France from November 24, 1944, to March 10, 1945. R. at 30. Upon discharge, appellant's hearing, for a whispered voice, was recorded in both ears as "15/15." S.R. at 1.

Sometime in 1953, appellant was granted service connection by the Veterans' Administration (now Department of Veterans Affairs) (VA) for residuals of second-degree burns, left hand, and very mild dermatomycosis of the left foot in seasonal remission, with both assigned a zero-percent disability rating, and for traumatic arthritis, right knee, assigned a ten-percent disability rating. R. at 33. At the same time he was denied service connection for an eye disability, hearing loss, residuals of burns to the right hand and face, and nervousness. R. at 34.

On March 2, 1987, appellant filed a statement in support of claim in order to reopen

his claims for service connection for residuals of burns to his right hand and face, and for hearing loss. R. at 31–32. Appellant stated,

Also while stationed in France and Italy I was assigned to the 99th Chemical Motar Batallion, [sic] Co. B which were [sic] responsible for firing 107mm motar [sic] (4.2). The maximum firing power range is 16 and my gun squard [sic] fired 32 power range, as a result of this increase in power range I feel it is a result [sic] on my present detoriating [sic] hearing of both ears.

R. at 31. On April 7, 1987, the rating board denied service connection for the hearing loss and for the powder burns to the face and right hand. R. at 33–34.

On March 12, 1988, Alfonso Jimenez submitted a "buddy statement" to the VA testifying that he served with appellant; he recalled that they fired "a lot of high explosives [sic] shells" in training and in combat. R. at 35. Mr. Jimenez also testified that appellant had talked to him about appellant's hearing problems. *Id.* On March 29, 1988, Eustavio Sanchez submitted a "buddy statement" to the VA attesting to the large volume of shells fired by appellant's unit during both training and combat situations and testifying that he felt that appellant's hearing was affected by the shells. R. at 36. On March 30, 1988, appellant submitted a document regarding the 99th Chemical Mortar Battalion which described the battles the unit participated in and the amount of ammunition used by the unit. R. at 37–38, 43–58.

On April 4, 1988, the rating board, by a deferred or confirmed rating decision, found that the evidence submitted did not warrant a change in the previous rating decision and continued to deny service connection for appellant's hearing loss. R. at 39. Appellant filed a Notice of Disagreement on March 30, 1989. A Statement of the Case was sent to appellant on May 5, 1989. R. at 59–62. On June 8, 1989, appellant requested a 60–day extension to file his VA Form 1–9 in order to initiate a substantive appeal. R. at 63. On June 30, 1989, the VA informed appellant that he

had to file the VA Form 1–9 by July 5, 1989; otherwise the decision to deny service connection for his hearing loss would be final. R. at 64. On July 21, 1989, appellant filed his VA Form 1–9 and requested an explanation as to why his request was not granted. R. at 65–66. On September 12, 1989, the VA informed appellant that his hearing loss claim was deemed final because he filed an untimely VA Form 1–9. R. at 68. On October 18, 1989, appellant filed a Notice of Disagreement to that decision. R. at 71. On December 4, 1989, a Statement of the Case was sent to appellant. R. at 69–72. The reason given for the denial of an extension of time to file a VA Form 1–9 was that he had not offered a reason for his request at the time he made his request. R. at 71. Upon being informed of this, appellant wrote to the VA and stated that he needed the additional time because he was going to an Army reunion in Cincinnati, Ohio, where he hoped he could obtain additional witnesses in support of his claim. R. at 74. The VA apparently made no response.

On January 30, 1990, appellant asked for another extension on his appeal because his wife was ill, and he needed more time to submit more information for his claim. R. at 76. Appellant then submitted a copy of a February 14, 1990, audiological evaluation by a treating physician, Dr. Jean Dugas. R. at 78. The evaluation showed bilateral hearing loss. On February 23, 1990, the VA informed appellant that he had until March 4, 1990, to perfect his appeal, otherwise the decision would be final and that no further extensions would be granted. R. at 80. On March 3, 1990, appellant submitted a statement in which he challenged the "whispered voice" test performed on him upon discharge and informed the VA of a hearing evaluation done on him in July 1959 at Lovelace Clinic for A.C.F. Industries by a Dr. Allan H. Bruckheim. R. at 81. Appellant was offering this information to explain how the noise produced by 4.2 mortar guns fired under maximum powder rings causes high-frequency hearing loss. *Id.*

In addition to appellant's statement, appellant also submitted a March 2, 1990,

statement by Dr. Dugas. Dr. Dugas stated,

> [Appellant] has a bilateral mild to profound sensorineural hearing loss. His speech discrimination is good as long as the words are presented at high intensity levels. This type of hearing loss is consistent with that produced by excessive noise exposure, as seen in military service. [Appellant's] history includes military service during World War II as gunner squad leader for 4.2 mortar gun. This exposure to the noise emitted by these weapons could cause such a hearing loss as seen by this patient's hearing evaluation.

R. at 82. A hearing was scheduled to take place on April 5, 1990, but appellant requested that the hearing be postponed until he could get some additional records. In his request, he asked if the VA could assist him in getting records, dated July 1959, from the Lovelace Clinic. R. at 85. There is no evidence in the record that a hearing was ever held. On July 20, 1990, the Board concluded that appellant's request for an extension to file a VA Form 1–9 should have been granted, and, therefore, the Board deemed that the issue of hearing loss was properly before it for full appellate review. *Alvis A. Swanson*, BVA 90–32354, at 5 (July 20, 1990). However, the Board denied appellant's claim on the merits. Appellant filed a timely appeal to this Court. This Court has jurisdiction to hear this case under 38 U.S.C. § 7252 (formerly § 4052).

## II. Analysis

■ The Court finds that appellant has submitted new and material evidence sufficient to reopen his claim. *See Colvin v. Derwinski*, 1 Vet.App. 171 (1991). Once reopened, "the BVA must evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991) (emphasis in original). In reaching its decision, the Board must provide adequate reasons or bases for its findings and conclusions. *See Gilbert v. Derwinski*, 1 Vet. App. 49, 56–57 (1990).

■ In the May 5, 1989, Statement of the Case, the agency of original jurisdiction concluded, erroneously as discussed below, that "[u]nder the law, service connection for hearing impairment may be service-connected only if shown by medical evidence in service, or to a compensable degree within one year of discharge." R. at 62. This erroneous conclusion was not discovered by the Board. Instead, the Board's entire discussion was as follows:

> With respect, then, to the claim of entitlement itself to service connection for hearing loss, it is noted that [appellant's] hearing was unimpaired, bilaterally, at the time of his September 1945 medical examination for separation from service, which was presumably subsequent to all combat actions in which he is shown to have participated. Additionally, the first post[-]service evidence of hearing loss was in February 1990, at which time he was shown to have sensorineural hearing loss, bilaterally, many years after his release from active duty. Accordingly, service connection for hearing loss is not found to be warranted.

*Swanson*, BVA 90–32354, at 6. The Board erred by not applying 38 U.S.C. § 1154(b) (formerly § 354(b)) and its implementing regulation, 38 C.F.R. § 3.304(d) (1991), to this case. Section 1154(b) provides, as to a veteran who "engaged in combat with the enemy" and who claims service connection for combat-related injuries, that the Secretary of Veterans Affairs

> shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran.

38 U.S.C. § 1154(b). Service connection "may be rebutted by clear and convincing evidence to the contrary." *Id.* The regulation is substantively identical. Therefore, despite the regional office's claim to the contrary, a veteran may establish a claim of service connection for a combat-related

injury on the basis of sworn statements alone. Appellant does not need to supply objective medical evidence to support his claim. *See Chipego v. Brown,* 4 Vet.App. 102, 102 (1993); *Sheets v. Derwinski,* 2 Vet.App. 512, 515 (1992); *Smith v. Derwinski,* 2 Vet.App. 137, 140 (1992).

 Here, in an attempt to reopen his claim, appellant submitted statements by fellow service members attesting to his hearing loss. He also submitted a statement by Dr. Dugas, his treating physician, stating that appellant's hearing loss was consistent with the type of noise to which appellant reported being exposed during heavy mortar use in World War II. The Board must provide reasons or bases for not accepting lay testimony and must make medical conclusions based on independent medical expertise. According to *Colvin,* 1 Vet.App. at 175:

> If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions.

Here, in view of Dr. Dugas' March 2, 1990, statement (R. at 82), a VA audiological examination should have been conducted to assess appellant's current hearing loss and provide an opinion as to its relationship, if any, to in-service hearing loss, which, in the absence of "clear and convincing evidence to the contrary," under section 1154(b) must be accepted as established.

 The Court notes that the BVA decision was apparently made without the benefit of a requested hearing and without consideration of medical reports which appellant had specifically requested VA assistance in retrieving. Upon presentation of a well-grounded claim, the VA is required to assist an appellant in developing the facts pertinent to his claim. *See* 38 U.S.C. § 5107(a) (formerly § 3007(a)); 38 C.F.R. § 3.103(a) (1991); *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991); *Moore v. Derwinski,* 1 Vet.App. 401, 405 (1991); *Murphy v.*

*Derwinski,* 1 Vet.App. 78, 80–81 (1990). Here, appellant had a well-grounded claim for hearing loss, but the VA failed to assist him when it did not attempt to obtain medical records and reports that he had specified. *See White v. Derwinski,* 1 Vet.App. 519, 521 (1991); *Littke v. Derwinski,* 1 Vet.App. 90, 92–93 (1991).

### III. Conclusion

Therefore, on consideration of the foregoing, appellant's motion for review is GRANTED. The Court's September 17, 1991, memorandum decision is VACATED. The July 20, 1990, BVA decision is VACATED and the case is REMANDED to the BVA for readjudication consistent with this opinion. *See Fletcher v. Derwinski,* 1 Vet. App. 394, 397 (1991).