**Henry R. BEAUSOLEIL, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 94–244.**

United States Court of Veterans Appeals.

Jan. 2, 1996.

Vincent A. Wenners, Jr., Manchester, NH, was on the brief, for appellant.

Mary Lou Keener, General Counsel; Norman G. Cooper, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel; and Edward V. Cassidy, Jr., Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and IVERS, Judges.

IVERS, Judge:

Henry R. Beausoleil appeals a February 24, 1994, decision of the Board of Veterans' Appeals (BVA or Board) not to reopen a claim for service connection for residuals of an injury to the chest, to include lung disease, and denying service connection for chronic residuals of cuts above the right eye and residuals of a concussion. *Henry R. Beausoleil*, BVA 94–02225 (Feb. 24, 1994). We have jurisdiction over the case pursuant to 38 U.S.C. § 7252(a). For the reasons set forth below, we affirm the February 1994 decision of the BVA.

## I. FACTUAL BACKGROUND

The appellant served on active duty in the United States Navy from August 28, 1942, to October 1, 1945. Record (R.) at 69. On September 25, 1943, the appellant's vessel, the U.S.S. SKILL, was torpedoed in the Bay of Salerno, and the appellant suffered a moderate contusion of the anterior chest over the sternum. R. at 28, 33–37, 41–43, 61, 63, 65.

Symptoms reported included coughing and chest pain for several days. R. at 39. The physical examination results were negative except for tenderness over the lower sternum. R. at 28. Service medical records indicated that the appellant's condition was "[m]uch improved" by October 7, 1943, and records from the next day stated that no treatment was indicated. R. at 39. A December 12, 1944, x-ray report stated: "Both apices are less radiant than normal. Increased hilus shadows on both sides. The right lung field is less radiant than the left. Increased lung markings to the base. The right chest appears slightly contracted. The costo[ ]phrenic angles are clear." R. at 67. A June 12, 1945, x-ray report regarding the appellant's chest similarly indicated the presence of increased hilar shadows and basal lung markings as well as a slight thickening of the right horizontal fissure, but further stated that his lungs were otherwise clear. R. at 47.

On November 1, 1945, the appellant filed an application with a VA regional office (RO) seeking compensation for a chest injury and various other conditions which are not relevant here. R. at 71. On October 18, 1946, the RO denied service connection for a chest injury on the ground that the condition was not found on the appellant's separation physical examination. R. at 74, 77. The appellant did not thereafter appeal this decision, and the RO's decision thus became final. *See Porter v. Brown*, 5 Vet.App. 233, 235 (1993); *Harder v. Brown*, 5 Vet.App. 183, 185 (1993).

On May 7, 1990, the appellant filed an application seeking compensation for a chest injury, cuts above the right eye, and a concussion as result of the in-service injury received when his vessel was torpedoed. R. at 82. A May 7, 1990, VA radiographic report stated:

> Heart size is normal. There is a retrocardiac air fluid level with features of a hiatus hernia. The lungs are somewhat hyperexpanded in a fashion consistent with [chronic obstructive pulmonary disease] COPD and there are atelectatic changes of discoid type in the left lung base. The hilar areas are moderately prominent as is common in

COPD. The current exam is virtually identical to previous of 3/13/90 and 3/16/90 obtained at Huggins Hospital in Wolfeboro, NH.

R. at 79. In VA progress notes dated May 7, 1990, a VA nurse stated that the appellant had presented "[o]ff and on mid-sternal pressure [which] is same as he has experienced since military accident in 1943. Some [shortness of breath] he says has been present for many years—however I note several years he has denied this. He is currently raking leaves and this may be a factor." R. at 86. On July 31, 1990, the RO did not reopen the claim for service connection for a chest injury and denied service connection for cuts above the right eye and a concussion. R. at 92–93.

On June 12, 1991, the appellant testified at a personal hearing before an RO hearing officer. R. at 110–23. The appellant also submitted a letter describing how his injuries from the torpedoing of his vessel had made the right side of his face into "one great big multicolored bruise" and relating that "the cut over [his] right eye was down to the bone." R. at 132. In the letter, he summarized: "While the cuts and bruises have healed, my chest was very sensitive to any pressure at all. It has remained so all these years.... I sincerely believe that I should be entitled to service connected disabilities for residuals of lung damage and chest contusions." R. at 132–33.

VA progress notes dated July 11, 1991, indicated: "Normal rib cage by palpation. No deformity. No cough. No expectoration. Normal percussion[,] normal auscultation. No tenderness or pain on firm pressure to sternum." R. at 142. In a July 29, 1991, VA radiological report, a clinical history of chest trauma during World War II was given along with an impression of bullous emphysema with no acute disease. R. at 136. In a July 29, 1991, VA pulmonary function test report, Dr. Victor Gordan, a VA physician, provided the following interpretation of the test results:

> There is moderate obstructive airway disease. There is significant response to bronchodilators. No previous study is available for comparison. The clinical information provided by the referring physi-

cian indicates that this patient had in the past chest trauma. *Trauma to the chest can cause restrictive lung disease. Lung volume study is indicated for the diagnosis of this condition if this is deemed necessary.*

R. at 138 (emphasis added). On August 29, 1991, the appellant was diagnosed with COPD, bullous emphysema, and atelectasis of the lung bases. R. at 143. Emphysema is a lung condition which is accompanied by labored breathing, a husky cough, and frequently by impairment of the heart. WEBSTER'S MEDICAL DESK DICTIONARY 208 (1986). Atelectasis is the collapse of the expanded lung. *Id.* at 54. On September 23, 1991, the RO hearing officer declined to reopen the chest injury condition claim and continued the denials of service connection for residuals of cuts above the right eye and a concussion. R. at 147. On February 24, 1994, the Board declined to reopen the chest injury claim and denied service connection for chronic residuals of cuts above the right eye and residuals of a concussion. *Beausoleil,* BVA 94–02225, at 8.

## II. ANALYSIS

### A. *Chest Injury, Including Lung Disease*

■ The appellant's claim for a chest injury was previously and finally denied in October 1946. R. at 74. Pursuant to 38 U.S.C. § 5108, the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. On claims to reopen previously and finally disallowed claims, the BVA must conduct a two-part analysis. *Manio v. Derwinski,* 1 Vet. App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material." *Colvin v. Derwinski,* 1 Vet.App. 171, 172 (1991). "New evidence" is evidence that is not "merely cumulative" of other evidence on the record. *Id.* at 174. Evidence is "material" where it is "relevant to and probative of the issue at hand" and where it creates "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome."

*Sklar v. Brown,* 5 Vet.App. 140, 145 (1993); *Cox v. Brown,* 5 Vet.App. 95, 98 (1993); *Colvin,* 1 Vet.App. at 174. Second, if the BVA determines that the evidence is new and material, it must reopen the claim and "evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992). Whether evidence is "new and material" is a conclusion of law which this Court reviews de novo under 38 U.S.C. § 7261(a)(1). *Ibid.*

In this case, the record includes a July 1991 interpretation from Dr. Gordan, a VA physician, who stated: "Trauma to the chest can cause restrictive lung disease. Lung volume study is indicated for the diagnosis of this condition if this is deemed necessary." R. at 138. Although this letter is new evidence, it is not material evidence based upon the standard established in the *Sklar* decision. *Supra* at 145. The statement by Dr. Gordan does not link chest trauma specifically to the appellant's current condition. Rather, the letter contains only a generic statement about the *possibility* of a link between chest trauma and restrictive lung disease. Such a statement is too general and inconclusive to make the claim well grounded in the appellant's case. *See Tirpak v. Derwinski,* 2 Vet.App. 609, 611 (1992). Therefore, the Court will affirm the Board's decision to deny the claim. The Court also notes that the appellant stated at his June 1991 personal hearing that a physician, Dr. Caron, had indicated in 1946 that he had found "something wrong" with the appellant's lungs, particularly his left lung. R. at 115. In this regard, the appellant is reminded that the duty to assist is not "always a one-way street" and that if he seeks the Board's consideration of additional private medical records, he should provide the Board with "information that is essential in obtaining the putative evidence." *Wood v. Derwinski,* 1 Vet.App. 190, 193 (1991), *reconsideration denied,* 1 Vet.App. 406 (1991).

**B.** *Claims for Cuts Above the Right Eye and Concussion*

"[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). A well-grounded claim is "a plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a)]." *Murphy v. Derwinski,* 1 Vet.App. at 79, 81 (1990). In *Tirpak v. Derwinski,* 2 Vet.App. 609, 610 (1992), the Court held that a claim must be accompanied by supportive evidence and that such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible." Where the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence is required to fulfill the well-grounded-claim requirement of section 5107(a); where the determinative issue is factual in nature, lay testimony may suffice by itself. *See Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993); *Espiritu v. Derwinski,* 2 Vet.App. 492, 494–95 (1992). The determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Grottveit,* 5 Vet. App. at 93. In *Magana v. Brown,* 7 Vet.App. 224, 227 (1994), the Court held that a "veteran's claim was well grounded because there was evidence both of an injury incurred in service and a current condition—shrapnel in his cheek—arising therefrom." *See also Lathan v. Brown,* 7 Vet.App. 359, 366 (1995) (where claimant presented considerable medical evidence of causation, Court held that claim was "plausible," especially in light of the relevant regulation).

In this case, however, the appellant has presented no evidence of any symptomatology relating to either a concussion or the residuals of cuts above the right eye. *See Rabideau v. Derwinski,* 2 Vet.App. 141, 143 (1992). At the June 1991 personal hearing, in response to the question "Has your chest problem been your major problem?", the appellant stated, "That is the only problem." R. at 119. In a May 27, 1991, letter, although the appellant related that he had sustained a bruise to the right side of his face and that the cuts above his right eye were "down to the bone" (R. at 132), he also concluded that he "should be entitled to ser-

vice connected disabilities for *residuals of lung damage and chest contusions* " (R. at 133) (emphasis added). In light of the evidence presented by the appellant and his statements, the Court concludes that, even if the appellant is arguing for service connection for these two conditions in his brief before the Court, the appellant has not presented a well-grounded claim for service connection for either residuals of cuts above the right eye or residuals of a concussion.

In his brief, the appellant relies on 38 U.S.C. § 1154(b) for the proposition that a "veteran may establish a claim of service connection for a combat-related injury on the basis of sworn statements alone, and he does not need to supply objective medical evidence to support the claim." Appellant's Brief at 10; *see Swanson v. Brown,* 4 Vet.App. 148, 152 (1993); *Chipego v. Brown,* 4 Vet.App. 102, 105 (1993).

The relevant statute states:

(b) In the case of any veteran who engaged in combat with the enemy in active service with a military, naval, or air organization of the United States during a period of war, campaign, or expedition, the Secretary shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence or aggravation in such service, and, to that end, shall resolve every reasonable doubt in favor of the veteran. Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service-connection in each case shall be recorded in full.

38 U.S.C. § 1154(b). The implementing regulation is found at 38 C.F.R. § 3.304(d) (1994).

■ The Court has held that the "[b]ecause the law specifically provides that service connection may be proven by satisfactory lay evidence, *without the support of official records,* it follows that the absence of such official clinical evidence alone is not sufficient to rebut the lay evidence." *Sheets v. Derwinski,* 2 Vet.App. 512, 515 (1992); *see Peters v. Brown,* 6 Vet.App. 540, 543 (1994).

The Court, however, has not held that invocation of section 1154(b) automatically results in an award of service connection. Section 1154(b) of title 38 of the U.S.Code and section 3.304(d) of title 38 of the Code of Federal Regulations do not absolve a claimant from submitting a well-grounded claim for service connection. In the instant case, the appellant's claims for service connection for residuals of cuts above the right eye and residuals of a concussion fall under § 1154(b) and are not well grounded. The statute and regulation dealing with satisfactory lay evidence of service connection for combat veterans do not serve to save the appellant from having to meet this requirement. *See Caluza v. Brown,* 7 Vet.App. 498, 507 (1995). Although section 1154(b) relaxes the evidentiary requirement as to the evidence needed to render a claim well grounded, that section deals only with the occurrence of an event, i.e., "whether a particular disease or injury was incurred or aggravated in service—that is, what happened then—not the questions of either current disability or nexus to service, as to both of which competent medical evidence is generally required." *Caluza,* 7 Vet. App. at 507; *see also Robinette v. Brown,* 8 Vet.App. 69, 77 (1995) (layperson's account of what physician told him did not constitute "medical" evidence in context of determination of well-groundedness because "medical" nature of such evidence was too attenuated and unreliable).

### C. *Remedy*

In its February 1994 decision, the Board found that the appellant's claims were well grounded. *Beausoleil,* BVA 94–02225, at 4. As we now hold, however, the appellant's claims for service connection for a concussion and residuals of cuts above the right eye are not well grounded. We are thus presented with the question of what remedy to apply to the facts of this case.

In *Robinette,* 8 Vet.App. at 79–80, the Court held that another remedy is available when the appropriate circumstances are present in a particular case involving a claim that is not well grounded. The *Robinette* Court held that 38 U.S.C. § 5103(a) imposes an obligation upon the Secretary to notify an individual of what is necessary to complete the application in the limited circumstances where there is an incomplete application that references other known and existing evidence. *Robinette,* 8 Vet.App. at 79–80. The nature and extent of that obligation depend on the particular circumstances of each case. For instance, in *Robinette,* VA was on notice of a physician's statement as recounted by a veteran to VA. *Id.* at 80. The veteran's statement was sufficient "notice that relevant evidence may have existed, or could have been obtained, that, if true, would have made the claim 'plausible' and that such evidence had not been submitted with the application." *Id.* at 80. Although the Board had determined there that the claim was well grounded, *id.* at 73, the Court held that a well-grounded claim had not been submitted, *id.* at 80.

In this case, however, the appellant's original application was not incomplete, and VA was not on notice of the existence of any evidence which "may have existed, or could have been obtained, that, if true, would have made the claim 'plausible.'" *Id.* at 80. We reiterate the holding in *Wood,* 1 Vet.App. at 193, which involved the obligations imposed on the Secretary and a claimant under the duty to *assist* pursuant to 38 U.S.C. § 5107(a), that "[t]he duty to assist is not always a one-way street. If a veteran wishes help, he cannot passively wait for it in circumstances where he may or should have information that is essential in obtaining the putative evidence."

Consequently, although under *Robinette* there is an obligation on the Secretary under 38 U.S.C. § 5103(a) in the appropriate circumstances, where those circumstances are not present, the Court applies the remedy recently set forth in *Edenfield v. Brown,* 8 Vet.App. 384, 389, 391 (1995). The remand described in *Robinette* is not necessary here. Therefore, the Court will affirm the Board's

disallowance of the claims for service connection for residuals of cuts above the right eye and residuals of a concussion.

## III. CONCLUSION

Accordingly, the Court AFFIRMS the Board's February 24, 1994, decision.