**Jeffrey A. SACKS, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

No. 97–1336.

United States Court of Veterans Appeals.

Aug. 7, 1998.

Jeffrey A. Sacks, pro se.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Michael A. Leonard, Deputy Assistant General Counsel; and Gary O'Connor, were on pleadings for appellee.

Before KRAMER, HOLDAWAY, and STEINBERG, Judges.

KRAMER, Judge:

The appellant, Jeffrey A. Sacks, appeals a May 16, 1997, decision of the Board of Veterans' Appeals (BVA or Board) denying as not well grounded the appellant's claim for service connection for pemphigus vulgaris. Record (R.) at 1–10. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the decision of the BVA.

# I. RELEVANT BACKGROUND

The appellant had active service from January 1980 to March 1983, from January to May 1986, and from January to September 1991. The last period of active duty included participation in Operations Desert Shield and Desert Storm. The appellant avers that during his service in Desert Shield/Storm he experienced sores or blisters like cold sores in his mouth. R. at 346–47, 352, 354. His parents confirm that he complained to them of this condition both during his last period of active service and after release from active duty. R. at 358. In July 1992, the appellant sought treatment for a foreign body sensation in his throat that he reported had had its onset four to six weeks earlier. R. at 210. Based upon the results of a biopsy performed in September 1992, he was diagnosed with pemphigus vulgaris. R. at 242. (Pemphigus vulgaris is "a severe and often fatal form of chronic pemphigus," which is "any of several diseases characterized by the formation of successive crops of large blisters on apparently normal skin and mucous membranes often in association with sensations of itching or burning and with constitutional symptoms." WEBSTER'S MEDICAL DESK DICTIONARY 525 (1986).)

In support of his claim to establish service connection for pemphigus vulgaris, the appellant submitted, inter alia, a medical journal article, which included a case study, that stated that pemphigus vulgaris "usually presents ... with erosion of mucous membranes, especially in the mouth. Often, painful mouth erosions are the only abnormality for months before skin erosions and/or flaccid blisters develop." R. at 301. The appellant relies principally on this evidence to demonstrate that pemphigus vulgaris had its onset in service.

# II. ANALYSIS

## A. The Use of Medical Treatise Evidence

"[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). Establishing a well-grounded claim generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disease or injury. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *see also Epps v. Gober,* 126 F.3d 1464, 1469 (Fed.Cir.1997); *Heuer v. Brown,* 7 Vet.App. 379 (1995); *Grottveit v. Brown,* 5 Vet.App. 91 (1993). The second and third *Caluza* elements can also be satisfied by evidence that a condition was "noted" during service or during an applicable presumption period; evidence showing post-service continuity of symptomatology; and medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. *See* 38 C.F.R. § 3.303(b) (1997); *Savage v. Gober,* 10 Vet. App. 488, 495–97 (1997).

Where the determinative issue involves medical etiology or a medical diagnosis, competent medical evidence that a claim is "plausible" or "possible" is generally required for the claim to be well grounded. *Heuer,* 7 Vet.App. at 384; *Grottveit,* 5 Vet. App. at 93. Such determinations require

"specialized knowledge or training," and, therefore, cannot be made by a lay person. *Layno v. Brown,* 6 Vet.App. 465, 470 (1994); *see also Espiritu v. Derwinski,* 2 Vet.App. 492, 495 (1992). Lay persons are not competent to offer medical opinions because the "question[s] involved [do] not lie within the range of common experience or common knowledge." *Id.* (quoting *Frye v. United States,* 293 F. 1013, 1014 (1923)).

The Court will assume for purposes of its analysis that both *Caluza* elements 1 and 2 are established. Thus, the question before the Court is whether, for purposes of establishing a well-grounded claim, the appellant's lay testimony and generic medical journal or treatise evidence that does not specifically opine as to the relationship between the appellant's condition and active service can establish the medical nexus evidence as required by *Caluza* element 3.

In addressing this question, a brief review of relevant caselaw would be helpful. Very early in the history of the Court it was made clear that the BVA may not "refut[e] the expert medical conclusions in the record with its own unsubstantiated medical conclusions. BVA panels may only consider independent medical evidence to support their findings." *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1991); *see also Alemany v. Brown,* 9 Vet. App. 518, 519 (1996); *Harder v. Brown,* 5 Vet.App. 183, 188 (1993); *Cosman v. Principi,* 3 Vet.App. 503, 506 (1992). In *Utendahl v. Derwinski,* 1 Vet.App. 530 (1991), the appellant submitted a medical treatise to prove that her husband's death was related to his service-connected sickle-cell anemia. The Court held that the treatise was insufficient to establish service connection because:

> The medical treatise submitted by appellant only raises the possibility that there may be some relationship between sickle cell anemia and certain cardiovascular disorders. The article does not show that there was a direct causal relationship between sickle cell anemia and the cause of death listed on the veteran's death certificate.

*Id.* at 531. Next, in *Tirpak v. Derwinski,* 2 Vet.App. 609 (1992), the Court, in dealing with the adequacy of medical evidence gener-

ally, stated that a medical opinion employing the phrase " 'may or may not' ... is speculative and would not 'justify a belief by a fair and impartial individual that the claim is well grounded.' " *Id.* at 611 (quoting 38 U.S.C. § 5107(a)). In *Caluza,* the Court clarified the role of medical evidence in determining whether a claim is well grounded: "Where the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence is required to fulfill the well-grounded-claim requirement of section 5107(a); where the determinative issue does not require medical expertise, lay testimony may suffice by itself." *Caluza,* 7 Vet.App. at 504. Later, in *Beausoleil v. Brown,* 8 Vet. App. 459 (1996), the Court considered a doctor's letter stating, "Trauma to the chest can cause restrictive lung disease." The Court held that such a statement

> does not link chest trauma specifically to the appellant's current condition. Rather, the letter contains only a generic statement about the *possibility* of a link between chest trauma and restrictive lung disease. Such a statement is too general and inconclusive to make the claim well grounded in the appellant's case.

*Id.* at 463. In *Libertine v. Brown,* 9 Vet. App. 521 (1996), the Court held that, for purposes of determining whether a claim is well grounded, medical treatise evidence proffered by the appellant in connection with his lay testimony was insufficient to satisfy the requirement of medical evidence of nexus because "none of [the treatise evidence] provides medical evidence demonstrating a causal relationship between *this appellant's* service-connected [post-traumatic stress disorder] and his alcohol and drug abuse." *Libertine,* 9 Vet.App. at 523 (emphasis added) (citing *Beausoleil, supra* ).

In the case at hand, the appellant attempts to link his in-service blisters with his present pemphigus vulgaris through a medical article that includes a generic statement to the effect that that condition "usually presents with erosions at mucous membranes, especially in the mouth" and that "painful mouth erosions" are "often" the first symptom of his condition. (In this regard, the Court notes that this statement is sec-

ondary to the focus of the article and case study, which is directed at the nature of pemphigus diseases and their relationship to other auto-immune diseases, rather than their diagnosis.) Because pemphigus vulgaris is an uncommon disease and the symptomatology of blisters followed by a diagnosis of pemphigus vulgaris is consistent with the journal article, it may be tempting to extrapolate from the article an inference of possible causal relationship between the appellant's blisters and his pemphigus vulgaris. The Court has long cautioned the BVA against relying on its own unsubstantiated medical opinion rather than basing its conclusions on medical evidence of record. *See Colvin, Alemany, Harder,* and *Cosman,* all *supra.* Suppose, in the context of considering whether a claim is well grounded, a treatise were being reviewed that stated that occasional joint pain is usually an early symptom of arthritis or that an incident of chest pain will usually occur before heart disease is diagnosed. Such evidence would be rejected as insufficient to link a veteran's averment of joint pain in service to a current diagnosis of arthritis or to link an averment of chest pain in service to a current diagnosis of heart disease, because that evidence would not address the likelihood that a person who had manifested a particular symptom would later be found to have the disease in question. Hence, that kind of treatise evidence would be "too general and inconclusive," *see Beausoleil, supra,* to make a link more than "speculative," *see Tirpak, supra,* and, accordingly, would be insufficient to make the claim plausible, that is, well grounded. The same is the case with the treatise evidence here. Acceptance of this evidence as sufficient to establish the plausibility of causality would be predicated on simply the instinctive inference of a lay person, rather than upon an adjudicative determination (made by a lay person) as to the credibility and weight of expert evidence. *See Layno, supra.*

This is not to say that medical article and treatise evidence are irrelevant or unimportant; they can provide important support when combined with an opinion of a medical professional. *See Rucker v. Brown,* 10 Vet. App. 67, 73–74 (1997); *Bielby v. Brown,* 7 Vet.App. 260, 265–67 (1994). Furthermore, our holding does not extend to a situation where medical article or treatise evidence, standing alone, discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least plausible causality based upon objective facts rather than on an unsubstantiated lay medical opinion. However, that is not the case here. The statement that pemphigus vulgaris "usually presents . . . with erosion of mucous membranes, especially in the mouth. Often, painful mouth erosions are the only abnormality for months before skins erosions and/or flaccid blisters develop," (R. at 301) cannot be used by a lay person to evaluate meaningfully the facts of a specific case because it in no way addresses—let alone, eliminates—the possibility of the existence of other conditions that also often present with the same symptomatology. In essence, it is similar to the statement "[t]rauma to the chest can cause restrictive lung disease," *Beausoleil,* 8 Vet.App. at 463, which in no way eliminates any other potential causes of the disease. Therefore, the Court concludes that the medical journal article submitted by the appellant in this case cannot itself satisfy the nexus element of a well-grounded claim.

B. The Lawfulness of 38 C.F.R. § 3.309(a)

▮ To the extent that the appellant argues that the list of chronic diseases enumerated in 38 C.F.R. § 3.309(a) is arbitrary and capricious because it does not include pemphigus vulgaris, the Court notes that the enumerated list is identical to the list of chronic diseases enumerated in 38 U.S.C. § 1101(3)—that is, the Secretary has opted not to add *any* diseases to those listed in the statute. Where Congress has given the Secretary discretion in developing regulations, "[t]he Court will sustain a regulation that is consistent with the language of the statute and is a plausible or reasonable interpretation of the law." *Winn v. Brown,* 8 Vet.App. 510, 515 (1996). Although 38 U.S.C. § 1101(3) permits the Secretary to list additional diseases as chronic, it is entirely permissive and does not require the Secretary to do so. Thus, the Court concludes that 38 C.F.R. § 3.309(a) is not subject to attack on the basis that the Secretary has not elected to add conditions that are not specifically

referenced in 38 U.S.C. § 1101(3). *See Winn*, 8 Vet.App. at 516 (1996) (Secretary was within his statutory authority under 38 U.S.C. § 1101(3) in not adding personality disorders to list of chronic diseases).

## III. CONCLUSION

Upon consideration of the above, the Court holds that the appellant has not demonstrated that the BVA committed either factual or legal error that requires reversal or remand. *See* 38 U.S.C. §§ 5107, 7104(d), 7261. The May 16, 1997, BVA decision is AFFIRMED.