﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/21 Archive Date: 04/30/21

DOCKET NO. 190802-62015
DATE: April 30, 2021

ORDER

Entitlement to service connection for a right knee disorder is denied.

Entitlement to service connection for a left knee disorder is denied.

Entitlement to service connection for a back disability is denied.

Entitlement to service connection for bilateral plantar fasciitis is denied.

Entitlement to service connection for left arm carpal tunnel syndrome (CTS) is denied.

Entitlement to service connection for obstructive sleep apnea (OSA) is denied.

Entitlement to service connection for residuals of traumatic brain injury (TBI) is granted.

FINDINGS OF FACT

1. A right knee disability was not present in service or for many years thereafter and is not shown to be causally or etiologically related to any disease, injury, or incident in service. 

2. A left knee disability was not present in service or for many years thereafter and is not shown to be causally or etiologically related to any disease, injury, or incident in service. 

3. A back disability was not present in service or for many years thereafter and is not shown to be causally or etiologically related to any disease, injury, or incident in service. 

4. Plantar fasciitis was not present in service or for many years thereafter and is not shown to be causally or etiologically related to any disease, injury, or incident in service. 

5. OSA was not present in service or for many years thereafter and is not shown to be causally or etiologically related to any disease, injury, or incident in service, or a service-connected disability.

6. The Veteran’s left CTS was not present in service or for many years thereafter, and it is not shown to be causally or etiologically related to any disease, injury, or incident in service.

7. Resolving reasonable doubt in the Veteran’s favor, residuals of TBI were incurred in service. 

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a right knee disability have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. § 3.303.

2. The criteria for entitlement to service connection for a left knee disability have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. § 3.303.

3. The criteria for entitlement to service connection for a back disability have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. § 3.303.

4. The criteria for entitlement to service connection for plantar fasciitis have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. § 3.303.

5. The criteria for service connection for OSA have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. § 3.303.

6. The criteria for service connection for left arm CTS have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. § 3.303.

7. The criteria for service connection for residuals of TBI have been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303. 

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from July 1996 to July 2000.

The Veteran appeals an April 2019 Appeals Modernization Act (AMA) rating decision. See VA Form 10182 AMA Notice of Disagreement (Hearing Review Lane) received August 2019.

Furthermore, in January 2021, the Veteran testified at a hearing before the undersigned Veterans Law Judge. A transcript of the hearing is of record.

Service Connection

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service, or if preexisting service, was aggravated therein. 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

To establish service connection for a disability, there must be competent evidence of the following: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship or “nexus” between the present disability and the disease or injury incurred or aggravated during service. Horn v. Shinseki, 25 Vet. App. 231, 236 (2010); Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); Gutierrez v. Principi, 19 Vet. App. 1, 5 (2004) (citing Hickson v. West, 12 Vet. App. 247, 253 (1999)). In many cases, medical evidence is required to meet the requirement that the evidence be “competent.” However, when a condition may be diagnosed by its unique and readily identifiable features, the presence of the disorder is not a determination “medical in nature” and is capable of lay observation. Barr v. Nicholson, 21 Vet. App. 303, 309 (2007).

Service connection for certain chronic diseases may be presumed to have been incurred in service by showing that the disease manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C. §§ 1101, 1112; 38 C.F.R. §§ 3.307(a)(3), 3.309(a). Such a chronic disease is presumed under the law to have had its onset in service even though there is no evidence of that disease during the period of service. 38 C.F.R. §§ 3.307(a). 

When a chronic disease is shown in service, sufficient to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303 (b). To be “shown in service,” the disease identity must be established, and the diagnosis must not be subject to legitimate question. Walker v. Shinseki, 708 F.3d 1331, 1335 (Fed. Cir. 2013); see also 38 C.F.R. § 3.303(b). There is no “nexus” requirement for compensation for a chronic disease which was shown in service, so long as there is an absence of intercurrent causes to explain post-service manifestations of the chronic disease. Walker, 708 F.3d at 1336.

Service connection may also be granted on a secondary basis for a condition that is not directly caused by the Veteran’s service. 38 C.F.R. § 3.310. In order to prevail under a theory of secondary service connection, the evidence must demonstrate an etiological relationship between (1) a service-connected disability or disabilities and (2) the condition said to be proximately due to the service-connected disability or disabilities. Buckley v. West, 12 Vet. App. 76, 84 (1998); see also Wallin v. West, 11 Vet. App. 509, 512 (1998). In addition, secondary service connection may also be found in certain instances when a service-connected disability aggravates another condition. See Allen v. Brown, 7 Vet. App. 439 (1995); 38 C.F.R. § 3.310 (b).

Service connection may be established on a presumptive basis for a Persian Gulf Veteran who exhibits objective indications of chronic disability resulting from undiagnosed illness that became manifest either during active service in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent or more not later than December 31, 2016, and which by history, physical examination, and laboratory tests cannot be attributed to any known clinical diagnosis. 38 U.S.C. § 1117; 38 C.F.R. § 3.317(a)(1) (VA has adopted an interim final rule extending this date to December 31, 2016). In claims based on undiagnosed illness, unlike those for direct service connection, there is no requirement that there be competent evidence of a nexus between the claimed illness and service. Gutierrez v. Principi, 19 Vet. App. 1, 8-9 (2004). Notably, laypersons are competent to report objective signs of illness. Id. 

A “qualifying chronic disability” for purposes of 38 U.S.C. § 1117 is a chronic disability resulting from (A) an undiagnosed illness, (B) a medically unexplained chronic multi symptom illness (such as chronic fatigue syndrome (CFS), fibromyalgia, or irritable bowel syndrome) that is defined by a cluster of signs or symptoms, or (C), any diagnosed illness that the Secretary determines in regulation prescribed under 38 U.S.C. § 1117(d) warrants a presumption of service connection. 38 U.S.C. § 1117(a)(2); 38 C.F.R. § 3.317(a)(2)(i)(B).

“Objective indications of chronic disability” include both “signs,” in the medical sense of objective evidence perceptible to a physician, and other, non-medical indicators that are capable of independent verification. To fulfill the requirement of chronicity, the illness must have persisted for a period of six months. 38 C.F.R. § 3.317(a)(2), (3). Signs or symptoms that may be manifestations of undiagnosed illness include, but are not limited to, the following: (1) fatigue; (2) signs or symptoms involving skin; (3) headache; (4) muscle pain; (5) joint pain; (6) neurologic signs or symptoms; (7) neuropsychological signs or symptoms; (8) signs or symptoms involving the respiratory system (upper or lower); (9) sleep disturbances; (10) gastrointestinal signs or symptoms; (11) cardiovascular signs or symptoms; (12) abnormal weight loss; and (13) menstrual disorders. 38 C.F.R. § 3.317(b).

The Board notes that, effective July 13, 2010, VA has amended its adjudication regulations governing presumptions for certain Persian Gulf War Veterans. Such revisions amend § 3.317(a)(2)(i)(B) to clarify that chronic fatigue syndrome, fibromyalgia, and irritable bowel syndrome are examples of medically unexplained chronic multi symptom illnesses and are not an exclusive list of such illnesses. Additionally, the amendment removes § 3.317(a)(2)(i)(B)(4) which reserves to the Secretary the authority to determine whether additional illnesses are ‘medically unexplained chronic multi symptom illnesses’ as defined in paragraph (a)(2)(ii) so that VA adjudicators will have the authority to determine on a case-by-case basis whether additional diseases meet the criteria of paragraph (a)(2)(ii). These amendments are applicable to claims pending before VA on October 7, 2010, as well as claims filed with or remanded to VA after that date. See 75 Fed. Reg. 61,997 (Oct 7, 2010).

Compensation under 38 U.S.C. § 1117 shall not be paid if: (1) there is affirmative evidence that an undiagnosed illness was not incurred during active military, naval, or air service in the Southwest Asia theater of operations during the Persian Gulf War; (2) if there is affirmative evidence that an undiagnosed illness was caused by a supervening condition or event that occurred between the Veteran’s most recent departure from active duty in the Southwest Asia theater of operations during the Persian Gulf War and the onset of the illness; or (3) if there is affirmative evidence that the illness is the result of the Veteran’s own willful misconduct or the abuse of alcohol or drugs. 38 C.F.R. § 3.317(c).

The Board notes that the Veteran had was deployed with the 22nd and 24th Marine Expeditionary Unit and participated in Operation Southern Watch and Desert Thunder in the Arabian Gulf. 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

1. Entitlement to service connection for a right knee disorder

2. Entitlement to service connection for a left knee disorder 

3. Entitlement to service connection for a back disability 

4. Entitlement to service connection for bilateral plantar fasciitis 

The Veteran contends that he developed his current bilateral knee disorders, bilateral plantar fasciitis and a back disability in service, as due to general wear and tear of military activities, such as marching and carrying heavy equipment. He asserts that the claimed disabilities have been symptomatic since service. 

The competent evidence of record confirms that the Veteran has been diagnosed with patellofemoral pain syndrome affecting both knees, bilateral plantar fasciitis and lumbar spondylosis. There is also evidence suggesting that the Veteran may have arthritis of the knee and lumbar spine. 

The service treatment records contain no complaints, history or findings consistent with a back, foot or knee disability. On separation from service in May 2000, the Veteran denied a history of “trick” or locked knee, frequent pain in back or foot trouble, and the Veteran’s feet, spine and lower extremities, were clinically evaluated as normal. 

VA treatment records after 2018 noted complaints of pain in both heels and knees since service. Imaging studies showed mild degenerative changes in both knees and tiny enthesophytes in the heels. He was treated for plantar fascitis with shoe inserts. In 2018, the Veteran was fitted with back support. In January 2019, he reported slight lower back pain. He attributed his complaints to carrying ruck sacks that were about 120 pounds for extended periods of time during service, as well as using non-combat boot type shoes per his drill instructor. He denied any acute injuries to his lower back, but noted that a study of the back performed a few years earlier showed minimal degenerative joint disease. A February 2019 MRI of the knees was reportedly negative. 

Thus, the evidence does not reflect a chronic bilateral knee, foot or back disability in service or within one year following discharge from service. The Board notes that the first documented evidence of bilateral knee, bilateral plantar fasciitis and back complaints, was initially noted more than 18 years after the Veteran’s discharge from service. In so noting, the Board recognizes that the mere absence of medical records is not dispositive as to the question of continuity; the lay evidence must be considered as well. See Buchanan v. Nicholson, 451 F.3d at1335. If, however, it is determined based on reliable evidence, that there was an extended period of time after service without any manifestations of the claimed condition, then that tends to weigh against a finding of a connection between the disability and service. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000). To the extent the Veteran is asserting continuity of symptomatology from service, the Board finds such statements inconsistent with the overall record, to include the service treatment records. Thus, the Veteran has not adequately shown that his present complaints of knee, foot and back symptoms continued since service.

Here, there is no competent and credible evidence of a nexus between the Veteran’s current bilateral knee disorder, plantar fasciitis or back disability and service. The only evidence of record in support of such a nexus is the Veteran’s lay opinion. To the extent the Veteran believes that his current bilateral knee disorder, plantar fasciitis and back disability are related to service, to include any injuries incurred therein, as a lay person, the Veteran does not have the specialized training sufficient to render such an opinion. Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). The diagnoses and/or etiology of knee, foot and spine disorders require medical testing and expertise to determine. Moreover, whether the symptoms the Veteran experienced in service or following service are in any way related to his current claimed disorders, is a matter that requires medical expertise to determine. See Clyburn v. West, 12 Vet. App. 296, 301 (1999) (“Although the Veteran is competent to testify to the pain he has experienced since his tour in the Persian Gulf, he is not competent to testify to the fact that what he experienced in service and since service is the same condition he is currently diagnosed with.”). Thus, the Veteran’s assertions regarding the etiology of the bilateral knee disorder, plantar fasciitis or back disability, diagnosed many years after service, and service, are of little probative value.

In this regard, it is important for the Veteran to understand that the service and post-service treatment records provide particularly negative evidence against the claims.

A VA examination or medical opinion regarding the etiology of his currently diagnosed bilateral knee disorder, plantar fasciitis or back disability is not indicated as there is no suggestion that the Veteran’s current disorders may be associated with service. Again, there is no competent evidence of chronic bilateral knee disorder, plantar fasciitis or back disability in service or within one year following discharge from service. Moreover, there is no competent and probative evidence to show that the Veteran had a knee, foot or a back disorder, during or contemporaneous with service and no competent and probative evidence that his current disorders are related to his service.

Additionally, neither patellofemoral pain syndrome, plantar fasciitis nor lumbar spondylosis, is an undiagnosed illness or a medically unexplained chronic multisystem illness. Moreover, a VA examiner in March 2019, specifically found that the Veteran’s bilateral patellofemoral pain syndrome, bilateral plantar fasciitis and lumbar spondylosis were less likely than not related to service in the Southwest Asia theater during the Gulf War because there was no evidence based medical literature that proffered a nexus between these disabilities and exposure to environmental hazards. Therefore, service connection for bilateral patellofemoral pain syndrome, bilateral plantar fasciitis or lumbar spondylosis as an undiagnosed illness under 38 C.F.R. § 3.317, cannot be established.

Given the foregoing, the Board finds that the preponderance of the evidence is against the claims for service connection for bilateral knee disorder, plantar fasciitis and a back disability, and that the claims must be denied. See 38 U.S.C. § 5107 (b); Gilbert, supra.

5. Entitlement to service connection for left arm CTS

6. Entitlement to service connection for OSA

The Veteran seeks entitlement to service connection for OSA and left arm CTS as due to service. The Veteran testified that he was diagnosed with left arm CTS and OSA in 2016. However, he reported a history of snoring and left hand tingling prior to being diagnosed with the current disabilities. At the Board hearing, he associated his left CTS with carrying heavy equipment in service. 

The Veteran’s service treatment records contain no complaints, history or findings consistent with left CTS or OSA. On separation from service in May 2000, the Veteran denied a history of frequent trouble sleeping, and his upper extremities, nose, mouth, throat, lungs, chest and his neurologic system, were clinically evaluated as normal. 

After service, treatment records in May 2017, noted a history of snoring. Reportedly, the Veteran’s spouse would wake him due to apnea. He was referred to the sleep clinic for evaluation. A sleep study in July 2017 revealed OSA. The Veteran was issued a continuous airway pressure (CPAP) machine at that time. March 2019 VA treatment notes associated the Veteran’s OSA with insufficient sleep due to work schedule and on-call duties as a firefighter. 

In July 2018, the Veteran was seen for complaints of neck pain and tingling in the left hand. He reported onset of symptoms earlier that year. Clinical testing revealed left upper extremity CTS. 

The Board notes that the first documented evidence of CTS and OSA is more than 17 years after the Veteran’s discharge from service. In so noting, the Board recognizes that the mere absence of medical records is not dispositive as to the question of continuity; the lay evidence must be considered as well. See Buchanan, 451 F.3d at 1336; see also Maxson at 1333. To the extent the Veteran is asserting continuity of symptomatology from service, the Board finds such statements inconsistent with the overall record, to include the service and post-service treatment records. Thus, the Veteran has not adequately shown that his present CTS and OSA continued since service. 

Here, there is no competent and credible evidence of a nexus between the Veteran’s current CTS and OSA and service. The only evidence of record in support of such a nexus are the lay opinions of the Veteran and his spouse. To the extent the Veteran and his spouse believe that his current CTS and OSA are related to service, as lay persons, they have not been shown to possess the specialized training sufficient to render such an opinion. Jandreau, 492 F.3d at 1377. The diagnoses and/or etiology of CTS and OSA require medical testing and expertise to determine. Moreover, whether the symptoms the Veteran experienced in service or following service are in any way related to his current claimed disorders, is a matter that requires medical expertise to determine. Thus, the assertions from the Veteran and his spouse regarding the diagnosis and etiology of CTS and OSA, diagnosed many years after service, and service, are of little probative value.

In this regard, it is important for the Veteran to understand that the post-service treatment records provide particularly negative evidence against this case.

A VA examination or medical opinion regarding the etiology of his currently diagnosed CTS or OSA is not indicated as there is no suggestion that the Veteran’s current disorders may be associated with service. Again, there is no competent evidence of CTS and OSA in service or within one year following discharge from service. Moreover, there is no competent and probative evidence to show that the Veteran was diagnosed and/or treated for CTS and OSA, during or contemporaneous with service and no competent and probative evidence that his current disorders are related to his service. On this record, there is no basis to grant the claims.

In support of his claim, the Veteran submitted several article suggesting a correlation between PTSD and OSA, including articles entitled “The Connection between Sleep Apnea and PTSD” and “PTSD severity linked to Higher Risk of Sleep Apnea in Veterans.” That article states in sleep apnea breathing frequently stopped and started. Veterans with PTSD were at higher risk for OSA and the risk rose with an increase in PTSD symptom severity. Thus, those with PTSD should be screened for OSA. However, it was also stated that “[t]he link between sleep apnea and PTSD in veterans is not clear. Possible factors that may connect the two disorders included combat-related sleep disturbance, chronic stress from PTSD, [and] poor sleep caused by sleep apnea.” The Board observes in this regard that a medical article or treatise “can provide important support when combined with an opinion of a medical professional” if the medical article or treatise evidence discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least “plausible causality” based upon objective facts rather than on an unsubstantiated lay medical opinion. Mattern v. West, 12 Vet. App. 222, 228 (1999).; see also Sacks v. West, 11 Vet. App. 314 (1998). The medical articles submitted by the Veteran in this case were not accompanied by the opinion of any medical expert linking his OSA to active service or to his service-connected PTSD. Thus, the medical articles submitted by the Veteran are insufficient to establish the medical nexus opinion required for causation. See Sacks, 11 Vet. App. at 317 (citing Beausoleil v. Brown, 8 Vet. App. 459, 463 (1996)); see also Libertine v. Brown, 9 Vet. App. 521, 523 (1996).

Additionally, neither OSA nor CTS is an undiagnosed illness or a medically unexplained chronic multisystem illness. Moreover, a VA examiner in March 2019, specifically found that the Veteran’s CTS was less likely than not related to service in the Southwest Asia theater during the Gulf War because there was no evidence based medical literature that proffered a nexus between CTS and exposure to environmental hazards. Therefore, service connection for CTS or OSA as an undiagnosed illness under 38 C.F.R. § 3.317, cannot be established.

For the foregoing reasons, the preponderance of the evidence is against the claims. The benefit-of the-doubt doctrine is therefore not for application, and the Veteran’s claims of entitlement to service connection for OSA and left CTS, to include as due to an undiagnosed illness, must be denied. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 55-56.

7. Entitlement to service connection for residuals of TBI

The Veteran seeks service connection for residuals of TBI. He claims that he initially became symptomatic for TBI as due to head injuries incurred due to exposure to multiple mortar and other explosive blasts between 1997 and 2000. 

The Veteran also described injuring his head when he jumped off a helicopter in service. 

The evidence shows that the Veteran has been diagnosed with residuals of TBI. With a current disability conceded, the issue before the Board becomes whether the Veteran’s disability is a result of his military service.

The service treatment records show that in 1995, the Veteran slipped on wet floor and hit his head on the deep sink. He denied loss of consciousness, headache, vision changes or ringing in the ears. The assessment was superficial laceration. On separation from service in May 2000, the Veteran denied a history of head injury, periods of unconsciousness and frequent or severe headaches, and examination of the Veteran’s neurological system revealed no abnormalities.

After service, the Veteran was evaluated for TBI by VA. He reported injuring his head in 1997 when he jumped off helicopter. Reportedly, he was able to perform his job duties and denied symptoms the following day. The examiner noted a history of TBI during military service, with complaints of memory loss and concentration problems with headaches. He was also noted to have subtle binocular vision disorder with convergence insufficiency.

On VA examination in February 2019, the Veteran reported onset of symptoms associated with TBI in approximately 1997, following exposure to multiple mortar and other explosive blasts between 1997 and 2000, during training missions. The Veteran also reported head injuries incurred when he jumped off a helicopter and when he slipped and hit his head on a sink in 1998. He complained of difficulty with memory and concentration. At that time, he was undergoing speech therapy for his memory. The examiner reported that because of the overlap of signs and symptoms related to his mental disorder and the signs and symptoms related to his TBI, he was unable to determine which signs and symptoms were caused by his mental conditions and which signs and symptoms are caused by his TBI without speculating. The examiner opined that TBI was less likely than not incurred in or caused by the claimed in-service injury, event, or illness. The examiner noted the in-service slip and fall head injury in 1998, with no loss of consciousness, headache, blurred vision or ringing in his ears. An examination at that time was noted as negative and the Veteran was diagnosed with superficial laceration with no follow up treatment. Moreover, on separation from service the Veteran denied any head injury, loss of memory or amnesia, period of unconsciousness, or frequent or severe headaches. Although the Veteran was being treated for symptoms of a head injury and symptoms on examination were consistent with a head injury, there was no other military documentation of a head injury in service, other than the superficial laceration. Therefore, the examiner concluded that it was less likely as not that his claimed TBI was a result of his slipping and hitting his head in the service.

In a May 2019 medical statement, the Veteran’s VA treating neuropsychologist noted that the Veteran had a history of head trauma in service. Comprehensive neuropsychiatric testing showed cognitive deficiencies consistent with TBI. The VA neuropsychologist opined that it was at least as likely as not that the Veteran’s cognitive impairment was due to head trauma during service. 

The mandate to accord the benefit of the doubt is triggered when the evidence has reached a stage of balance. Concerning the residuals of TBI, the Board is of the opinion that this point has been attained, based on the Veteran’s lay statements that consistently and credibly indicated that he sustained head trauma in service, and the service treatment which confirm a head injury, along with the medical opinion of the Veteran’s VA treating neuropsychologist in May 2019, which provides a nexus between the diagnosis TBI and service. The Board acknowledges that the VA examiner in February 2019 provided a negative nexus opinion. However, as the balance of positive and negative evidence is in relative equipoise, the benefit of the doubt rule applies. Thus, service connection is warranted. See 38 C.F.R. §§ 3.310, 3.102; Gilbert, supra. 

 

 

John J. Crowley

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board Azizi, T.

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.