Citation Nr: 1554513 
Decision Date: 12/31/15 Archive Date: 01/07/16

DOCKET NO. 09-36 369 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado


THE ISSUE

Entitlement to service connection for arthritis of the entire body.


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

J. Schulman, Associate Counsel


INTRODUCTION

The Veteran, who is the appellant in this case, had active service with the United States Army from March 1951 to March 1954, for which he was awarded that Korean Service Medal with two Bronze Service Stars, the United Nations Service Medal, and the National Defense Medal.
 
This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2008 decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Denver, Colorado, which denied service connection for arthritis. The Veteran appealed the denial, perfected his appeal to the Board, and in March 2015 the Board remanded the issued for additional development.

The Veteran testified before the undersigned Veterans Law Judge at a hearing held in December 2014. A transcript of the hearing has been associated with the claims file.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. Arthritis did not manifest to a compensable degree during, or within one year of separation from service, and is not etiologically related to service.

2. The Veteran does not have malaria, nor any current residuals of malaria.


CONCLUSION OF LAW

Arthritis was not incurred in, or as a result of, service, and may not be presumed to have been incurred therein. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.307, 3.309 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran asserts that arthritis of the entire body was incurred in, or as a result of, service. Specifically, he has contended that he contracted an infectious disease - variously described as Manchurian fever, Manchurian rat fever, or malaria - and that the impact of the infection over many years has included a general decline in health resulting in the onset of arthritis. He has also testified, including during his hearing before the undersigned, that his current symptoms have been ongoing and continuous since service. The Board recognizes that the Veteran has submitted photographs of himself operating earth-moving machinery and driving large vehicles, which he asserts were taken during service, and finds that his military occupational specialty involved the use of such equipment, as he has reported.

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303(a) (2015). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). The existence of a current disability is the cornerstone of a claim for VA disability compensation. 38 U.S.C.A. § 1131 (West 2014); see also Degmetich v. Brown, 104 F.3d 1328 (1997). This requirement "is satisfied when a claimant has a disability at the time a claim for VA disability compensation is filed or during the pendency of that claim and that a claimant may be granted service connection even though the disability resolves prior to the Secretary's adjudication of the claim." McLain v. Nicholson, 21 Vet. App. 319, 321 (2007); see also Romanowsky v. Shinseki, 26 Vet. App. 289 (2013) (holding that evidence of a recent diagnosis of a disability prior to a claim for benefits based on that disability, is relevant evidence that the Board must address in determining whether a current disability existed at the time the claim was filed or during its pendency).

Arthritis is a "chronic disease" which is listed under 38 C.F.R. § 3.309(a); therefore the presumptive provisions of 38 C.F.R. § 3.303(b) apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Where the evidence shows a "chronic disease" in service or "continuity of symptoms" after service, the disease shall be presumed to have been incurred in service. In order to show a "chronic" disease in service, the record must reflect a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Where a chronic disease has been incurred in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of "continuity of symptoms" after service is required in order to establish entitlement to service connection. 38 C.F.R. § 3.303(b). With regard to any disorders which are not a "chronic disease" listed under 38 C.F.R. § 3.309(a), 38 C.F.R. § 3.303(b) does not apply. Walker v. Shinseki, 708 F.3d 1331, 1340 (Fed. Cir. 2013) (holding that the continuity provisions of 38 C.F.R. § 3.303(b) apply only to those disease listed under 38 C.F.R. § 3.309(a)).

Additionally, where a veteran served 90 days or more of active service, and certain chronic diseases, including arthritis), become manifest to a degree of 10 percent or more within one year after the date of separation from such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137 (West 2014); 38 C.F.R. §§ 3.307, 3.309(a). While the disease need not be diagnosed within the presumption period, it must be shown, by acceptable lay or medical evidence, that there were characteristic manifestations of the disease to the required degree during that time. Id.
 
Generally, lay evidence is admissible with regard to a disease with "unique and readily identifiable features" that is "capable of lay observation." See Barr v. Nicholson, 21 Vet. App. 303, 308-09 (2007). Lay evidence on its own can be sufficient evidence of a diagnosis if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Additionally, a lay person may speak to etiology in some limited circumstances in which nexus is obvious merely through observation, such as sustaining a fall leading to a broken leg. Id. A layperson cannot provide evidence as to more complex medical questions and, specifically, cannot provide an opinion as to etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (concerning rheumatic fever). See 38 C.F.R. § 3.159(a)(2).

Service treatment records reflect that the Veteran was subject to a number of differing infections over the course of his service, beginning in May 1951 when he was diagnosed with "Rubella (German Measles)." In May 1952, while stationed in Korea, he reported a one week history of abdominal pain, fever, and chills. Testing was done for malaria, but evidence of P.vivax (the plasmodium vivax organism which causes recurrent malaria) was not seen at that time - though in June 1952 there was positive evidence of the organism on blood testing. Finally, in February 1954, just one month prior to separation from service, the Veteran came down with bronchitis. Other than the above-indicated 1952 endorsements, there are no other complaints regarding fever, and no complaints or treatment at all referable to soreness, aching, etc. of the joints. On separation examination in March 1954, there was an affirmative indication next to "spine or other musculoskeletal" systems, however the narrative portion of the Report of Medical History states that the finding involved only a scar on the forearm from where a tattoo had been removed.

At the time of his hearing before the undersigned, the Veteran submitted a statement from a private physician, Dr. CPH, which indicated that the Veteran had:

been a patient in [his] office since 1959. He served in the Korean War in 1951-1952. As a result of [the Veteran's] military service he has suffered from: 
 1. Chronic, Severe Osteoarthritis
 2. DJD [i.e., degenerative joint disease]

Without any explanation of how he arrived at this conclusion, including what in-service event, disease, or injury caused the subsequent onset of osteoarthritis and degenerative joint disease, the Board finds the opinion to be of very little probative value. During his hearing, the Veteran and his representative confirmed that he had been directly under the care and treatment of Dr. CPH and his partner since 1959. VA subsequently attempted to seek treatment records from Dr. CPH's office of the preceding 55 years, however the Veteran did not provide the required authorization for VA to do so, and VA was thus unable to acquire these records. 

The Board recognizes that Dr. CPH's practice has been treating the Veteran for more than half a century, though without being able to review the pertinent records, there is no information regarding the nature of such treatment. Rather the first post-service treatment records are from October 1996 - at which time the Veteran complained of dizziness when rolling over in bed.

The first complaints of orthopedic symptoms were in January 1997 when a three week history of left hip and low back pain was reported. Thereafter, records confirm an ongoing history of neck and low back pain, in addition to evidence of shoulder and hip pain until the present. Radiographs during this time period confirm degenerative disc disease (see January 2002 report) and degenerative joint disease (see January 2004 and October 2012 reports). Based in this evidence, the Board finds that the Veteran does have a current arthritic disorder, manifest in multiple joints. However, the presence of arthritis on its own, is not sufficient to establish service connection without admissible and probative evidence of a connection to service.

In September 2015 the Veteran underwent a series of VA examinations, covering his upper and lower extremities, cervical and thoracolumbar spinal segments, and consideration of his history of infectious disease exposure. He reported first experiencing low back pain approximately five years after separation from active duty, and that pain progressed gradually to involve additional joints. His military history included working as a truck driver for most of the three years that he was in service, and while on deployment to Korea, he helped to build roads and operated an air compressor. Following separation from active duty, the Veteran worked in many occupations, including as a truck driver for the initial six months, followed by manual mixing concrete for 5 years, farming and related agricultural work, after which he owned businesses relating to garbage collection and landfill services. At the time of his examination, he was self-employed running a storage company wherein he is the only employee.

Having reviewed the entire claims file, the examiner concluded that arthritis was "less likely than not . . . incurred in or caused by" service. In arriving at this conclusion, the examiner accurately observed that service treatment records reflect no specific injury to the joints nor any chronic joint complaints. The examiner also noted that, after only three years in service, his post-service employment history "involved a number of occupations with significant manual labor, including mixing of cement and farming. These are expected to contribute to degenerative disease of the joints." In addition, she noted that the Veteran's advanced age was "in and of itself . . . a risk factor for degenerative arthritis."

Regarding his in-service history of infectious diseases, the Veteran stated that Hantavirus was "going around" in Korea in 1951 and that he was treated at a field hospital for symptoms of fever, weakness, and disorientation for eight days of treatment before returning to his unit. Since that time, he has reportedly felt fatigued and recalled being readmitted when he returned stateside for complaints of fatigue, but no cause could be identified. He further reported that attempts had been made to test his blood for Hantavirus but the labs "couldn't do the test." The examiner reviewed the available service treatment records and noted that although he was admitted for observation of a fever and chills in May 1952, malaria smear testing was negative, and his white blood cell count was mildly elevated with lymphocytic shift. The examiner noted that that in June 1952 a repeat blood smear was conducted with "parasites resembling P. vivax seen," and the Veteran began treatment with chloroquine.

The examiner concluded that there was no clinical evidence of Hantavirus or any viral hemorrhagic fever. Those symptoms of chills and abdominal pain documented in May 1952 "were associated with a diagnosis of malaria," and "[b]y the description of the course in the [service treatment records], it is at least as likely as not that the [V]eteran experienced uncomplicated malaria." To that end, there was no documentation of end-organ damage or involvement, the Veteran was appropriately treated for the infection, and the record "fails to demonstrate evidence of long-term sequelae resulting from this infection." Citing a report published by the Centers for Disease Control and Prevention, it was noted that "[r]eview of the medical literature does not support long-term chronic fatigue and/or diffuse arthralgias/arthritis associated with prior malaria infection." Rather, "the [V]eteran's symptoms in May 1952 are consistent with malaria," and it is less likely than not that the "[V]eteran's current arthritis is related to his prior infection with malaria."

In December 2014, the Veteran submitted an undated newspaper clipping of an article entitled, Virus May Cause Chronic Fatigue. The brief article stated that "[a] new study has uncovered a family of mouse viruses in some people with chronic fatigue syndrome." Generic information from a medical journal, treatise, or website is too "general and inconclusive" to establish a medical nexus to a disease or injury, Mattern v. West, 12 Vet. App. 222, 228 (1999) (citing Sacks v. West, 11 Vet. App. 314, 317 (1998)), and without application to the specific facts of the Veteran's case, does little to support the Veteran's claims. See Sacks v. West, 11 Vet. App. 314, 316-17 (1998) (holding that a medical article or treatise can provide support for a claim, but must be combined with an opinion of a medical professional and be reflective of the specific facts of a case as opposed to a discussion of generic relationships); Libertine v. Brown, 9 Vet. App. 521, 523 (1996) (finding that generic medical literature, which does not apply medical principles to the facts of an individual case, does not provide competent evidence). Without consideration by a clinical professional of the specific nature and circumstances of the Veteran's course of arthritis, or the nature of his in-service infections, the submitted evidence is of little probative value in substantiating the appeal. This is in contrast to the article relied upon by the VA examiner, who considered the specific and unique facts of the Veteran's medical history, in applying the more general conclusions discussed in that report.

Although the Veteran now reports that he was first diagnosed with arthritis in 1959 - five years after separating from service - and has had related symptoms since that time, this assertion is somewhat at odds with his own 1997 report of a three week history of low back and left hip pain. The Board also observes that the VA examiner rely in part on her own conclusion that the current symptoms did not have their onset until the mid-1990s in determining that current arthritic symptoms are not related to service. However, this was not the only fact relied upon. Rather, she also noted such factors as the Veteran's age, the limited duration of his service when compared to the ensuing half-century, and his post-service history of heavy manual labor. It was due in part to these factors that she concluded that arthritis is not related to service.

While the Veteran's assertions regarding pain and its onset are admissible, Layno v. Brown, 6 Vet. App. 465 (1994), his inconsistencies in asserting when such symptoms began render the assertions of reduced probative value. So too, for reasons described above, is the December 2014 report by Dr. CPH in which he concluded that osteoarthritis and degenerative joint disease are both "a result of his military service." During the December 2014 hearing before the undersigned, the Veteran's representative indicated that great weight should be afforded to Dr. CPH's opinion because "he's treated [the Veteran] since 1959." To that end, the Board notes that Dr. CPH did not assert a 55 year treatment history, only that the Veteran has been a patient in his office for that time period, and the 2015 VA examiner noted that "available information on the internet suggests that Dr. [CPH] graduated from osteopathic medical school in 1981, so it is likely he himself has not
followed the [V]eteran since 1959."

The Board finds that the 2015 VA examiner's opinion is of far greater probative value than either Dr. CPH's unsupported 2014 statement, or the Veteran's lay assertions of a connection between service and his current arthritis. Specifically, the opinion was reached after thorough examination of numerous body systems, a complete and detailed review of those records in the claims file, and consideration of the Veteran's reported in-service and post-service history.

Finally, to the limited extent that the Veteran may have been attempting to raise a claim of service connection for malaria itself, there is no postservice evidence of complaints or treatment referable to diagnosis of malaria, or any evidence of compensable residuals since separation from service, including within one year of separation. See 38 C.F.R. § 3.309(b). 

Given the foregoing, the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2015). A notice letter was sent to the Veteran in April 2008, prior to the initial adjudication of the claim on appeal. Notice sent to the Veteran included descriptions of what information and evidence must be submitted to substantiate the claim, including a description of what information and evidence must be provided by the Veteran and what information and evidence would be obtained by VA. The Veteran was also advised to inform VA of any additional information or evidence that VA should have, and to submit evidence in support of the claim to the RO. The content of the letter complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b). Moreover, in a hearing before the undersigned, the presiding Veterans Law Judge clarified the issues on appeal and identified potentially relevant additional evidence that the Veteran may submit in support of the claim, and provided 90 days for the Veteran and his representative to provide such evidence. These actions by the undersigned satisfy the obligations imposed by 38 C.F.R. § 3.103. See Bryant v. Shinseki, 23 Vet. App. 488 (2010).

VA also has a duty to assist an appellant in the development of the claim. To that end, VA must make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159 (2015); see Golz v. Shinseki, 590 F.3d 1317, 1320-21 (2010) (stating that the "duty to assist is not boundless in its scope" and "not all medical records . . . must be sought - only those that are relevant to the veteran's claim").

VA's duty to assist in developing the facts and evidence pertinent to a veteran's claim is not a one-way street, and it is the responsibility of veterans to cooperate with VA with regard to development. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). This is especially true in matters relating to private records, to which VA has no access or knowledge without the Veteran's cooperation. Given the Veteran's actions, and VA's offers to assist him in developing the claim, the Board finds that VA has no additional duty with regard to request for private treatment records. See Caffrey v. Brown, 6 Vet. App. 377, 383 (1994); Olson v. Principi, 3 Vet. App. 480, 483 (1992).

During his hearing before the undersigned, the Veteran reported that he has been told in the past that some portion of his service department records may have been destroyed in a fire - possibly the 1973 fire at the National Personnel Records Center (NPRC) in St. Louis, Missouri. The service treatment records of record appear to be complete, however, in cases where records once in the hands of the government are lost, the Board has a heightened obligation to explain its findings and conclusions and to consider carefully the benefit-of-the-doubt rule where applicable. See O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). The unavailability of records, however, does not lower the legal standard for substantiating a claim, but rather increases the Board's obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the claimant. See Russo v. Brown, 9 Vet. App. 46 (1996).

The Board finds that VA has satisfied its duty to assist by acquiring service records as well as records of VA and private treatment - to the extent that such treatment has been identified by the Veteran. These pertinent records have been associated with the Veteran's claims file and reviewed in consideration of the issue before the Board. The duty to assist was further satisfied by a series of VA examinations conducted by the same examiner in September 2015, during which the examiner conducted a physical examination of the Veteran, was provided the record for review, took down the Veteran's history, considered the lay evidence presented, laid a factual foundation for the conclusions reached, and reached conclusions and offered opinions based on history and examination that are consistent with the record. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion has been met. 38 C.F.R. § 3.159(c)(4) (2015); Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011) (holding that the Board is entitled to presume the competence of a VA examiner and the adequacy of their opinion). Based on the foregoing, VA has fully met its duties to notify and assist the claimant with the development of the claims and no further notice or assistance is required.
 
Finally, in March 2015 the Board remanded for additional development, including retrieval of private medical records and clarification of regarding the December 2014 private medical opinion, in addition to completion of VA examinations on the matter of etiology of the claimed disorder. Since that time, the Veteran was sent a letter in June 2015 asking him to complete a VA Form 21-4142, Authorization to Disclose Information, and a VA Form 21-4142a, General Release for Medical Provider Information. The completion of these forms was necessary to allow VA to contact the Veteran's private care provider and ask for both additional treatment records and for specific clarification of the opinion he provided in December 2014. In response, the Veteran returned unsigned VA Forms 21-4142 and 21-4142a with the statement "medical records at national service office," and listing the name of an employee of Disabled Veterans of America, the veteran's service organization acting has his representative. 

VA's duty to assist in developing the facts and evidence pertinent to a veteran's claim is not a one-way street, and it is the responsibility of veterans to cooperate with VA with regard to development. See Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). This is especially true in matters relating to private records, to which VA has no access or knowledge without the Veteran's cooperation. Unfortunately, without signed authorization the RO was unable to contact the Veteran's physician for the purposes of conducting additional development. The RO was successful, however, in affording the ordered VA examination in September 2015. The Board finds that the RO substantially complied with the March 2015 remand directives, and has properly proceed with the foregoing decisions. See Stegall v. West, 11Vet. App. 268, 271 (1998) (noting the Board's duty to "insure [the RO's] compliance" with the terms of its remand orders).


ORDER

Service connection for arthritis is denied.




____________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs