http://www.va.gov/vetapp16/Files4/1630483.txt

Citation Nr: 1630483 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 14-11 186 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas

THE ISSUE

1. Entitlement to service connection for a left ankle disability, to include degenerative joint disease (DJD) and amputation of the foot.

2. Entitlement to service connection for a low back disability, to include DJD with radiculopathy and to include as secondary to a left ankle disability.

3. Entitlement to service connection for a left knee disability, to include DJD with total knee replacement and to include as secondary to a left ankle disability.

4. Entitlement to service connection for a right knee disability, to include DJD with total knee replacement and to include as secondary to a left ankle disability.

5. Entitlement to service connection for a right ankle disability, to include DJD and to include as secondary to a left ankle disability.

6. Entitlement to service connection for a left foot disability, to include DJD and amputation of the foot and as secondary to a left ankle disability.
7. Entitlement to service connection for a right foot disability, to include DJD and as secondary to a left ankle disability. 

REPRESENTATION

Appellant represented by: Texas Veterans Commission

WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse

ATTORNEY FOR THE BOARD

L. Willis, Associate Counsel 

INTRODUCTION

The Veteran had active service in the Navy from January 1958 to January 1962.

These matters come before the Board of Veterans' Appeals (Board) on appeal from July and November 2012 rating decisions issued by a Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas.

In August 2015, the appellant testified at a travel Board hearing before the undersigned Veterans Law Judge. A copy of the transcript has been associated with the electronic claims file. At the hearing, the undersigned granted the Veteran's request to hold the record open for 60 days so that he may obtain additional medical evidence. The claim was held in abeyance until after the requested time period ended. 

In February 2016, the Board remanded the matters for additional development. The Board is satisfied there was substantial compliance with its remand orders. See Stegall v. West, 11 Vet. App. 268 (1998); Dymant v. West, 13 Vet. App. 141 (1999). During the pendency of the remand, the Appeals Management Center (AMC) granted a 40 percent rating for residuals of traumatic brain injury (TBI), effective the date of the claim and a separate 30 percent rating for headaches related to TBI. In an April 2016 VA Form 21-4138, the Veteran expressed satisfaction with those grants and therefore that issue is no longer considered to be on appeal. The only issues remaining on appeal are those listed on the title page. 

This appeal was processed using the VBMS paperless claims processing system. Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2015). 38 U.S.C.A. § 7107(a)(2) (West 2014).

FINDINGS OF FACT

1. The Veteran's left ankle disability was neither manifest in service nor diagnosed within one year of service, and is not otherwise related to service.

2. The Veteran's back disability is not related to his military service and is not related to a service-connected disability.

3. The Veteran's left knee disability is not related to his military service and is not related to a service-connected disability.

4. The Veteran's right knee disability is not related to his military service and is not related to a service-connected disability.

5. The Veteran's right ankle disability is not related to his military service and is not related to a service-connected disability.
6. The Veteran's left foot disability is not related to his military service and is not related to a service-connected disability.

7. The Veteran's right foot disability is not related to his military service and is not related to a service-connected disability.

CONCLUSIONS OF LAW

1. The Veteran's left ankle disability was not incurred in or aggravated by service, and may not be presumed to have been so incurred or aggravated. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309 (2015).

2. The Veteran's back disability was not incurred in service, and was not caused or aggravated by a service-connected disability. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2015).

3. The Veteran's left knee disability was not incurred in service, and was not caused or aggravated by a service-connected disability. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2015).

4. The Veteran's right knee disability was not incurred in service, and was not caused or aggravated by a service-connected disability. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2015).

5. The Veteran's right ankle disability was not incurred in service, and was not caused or aggravated by a service-connected disability. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2015).
6. The Veteran's left foot disability was not incurred in service, and was not caused or aggravated by a service-connected disability. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2015).

7. The Veteran's right foot disability was not incurred in service, and was not caused or aggravated by a service-connected disability. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1131, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Veterans Claims Assistance Act of 2000 (VCAA)

Under the VCAA, upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper notice from VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; (3) that the claimant is expected to provide; and (4) VA must ask the claimant to provide any evidence in her or his possession that pertains to the claim in accordance with 38 C.F.R. § 3.159(b)(1). This notice must be provided prior to an initial unfavorable decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004).

Here, the Board finds that the VA has satisfied its duties under the VCAA. Specifically, letters were sent to the Veteran in September and October 2010 which detailed the claims process and advised the Veteran of the evidence and information needed to substantiate his claims on a direct and secondary basis. The letters further informed the Veteran of his obligations to provide necessary information to assist in his claim and the VA's obligations to obtain such evidence and information that is deemed to be in the VA's possession or that the VA has permission to obtain. The Veteran was also informed of VA's practices in assigning disability evaluations and effective dates for those evaluations. 

In regard to the duty to assist, the Veteran was afforded a VA examination in March 2012. The examiner reviewed the case file, examined the Veteran and considered his statements prior to rendering an opinion. The examiner provided a rationale for the opinion offered. Addendum opinions were also obtained in October 2012 and March 2016. The October 2012 addendum provided clarification of the opinion regarding the left ankle disability and the March 2016 addendum addressed the potentially conflicting medical evidence concerning the Veteran's left ankle disability. Therefore, the Board finds that the examination and addendum opinions are adequate for adjudication purposes.

Further, the Veteran's service treatment and private treatment records have been obtained and considered. Thus, the Board concludes that VA has made every reasonable effort to obtain all records relevant to the Veteran's claims. 

At the Veteran's August 2015 hearing, the undersigned discussed in detail the elements of the claims on appeal, to include identifying the specific types of evidence and information which would be of assistance in substantiating it. Additionally, the Veteran was offered an opportunity to ask the undersigned questions regarding his claims. The provisions of 38 C.F.R. § 3.103(c)(2) impose two distinct duties on VA employees, including Board personnel, in conducting hearings: the duty to fully explain the issues and the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010). Neither the Veteran nor his representative has asserted that VA has failed to comply with 38 C.F.R. § 3.103(c)(2) (2015), nor have they identified any prejudice in the conducting of the Board hearing. The Board, therefore, concludes that it has fulfilled its duty under Bryant.

Accordingly, the Board finds that there is no further action to be undertaken to comply with the provisions of 38 U.S.C.A. § 5103(a), § 5103A, or 38 C.F.R. 
§ 3.159, and that the Veteran will not be prejudiced as a result of the Board's adjudication of his claims.

II. Service Connection

The Veteran contends that he is entitled to service connection for the above referenced disabilities on the basis that they are a result of an in-service 20 foot fall. Alternatively, he contends that he injured his left ankle during service and his remaining disabilities are secondary to his left ankle disability. 

In order to obtain service connection under 38 U.S.C.A. §§ 1110, 1131 (West 2014) and 38 C.F.R. § 3.303(a) (2015) a Veteran must satisfy a three element test: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service - the so- called 'nexus' requirement. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004); Walker v. Shinseki, 708 F.3d 1331, 1333 (Fed. Cir. 2013). 

Secondary service connection may be granted for disability that is proximately due to, or the result of, a service-connected disease or injury. 38 C.F.R. § 3.310 (a) (2015). The evidence must show that a current disability exists and that the current disability was either caused by or aggravated by a service-connected disability. See Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc) (holding that when aggravation of a non-service-connected disability is proximately due to or the result of a service connected condition, such disability shall be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation).

In the case of any veteran who served for ninety (90) days or more during a period of war - a chronic disease becoming manifest to a degree of ten (10) percent of more within one (1) year from the date of separation from such service shall be considered to have been incurred in or aggravated by such service, notwithstanding there is no record evidence of such disease during the period of service. 
38 U.S.C.A. § 1112(a)(1) (West 2014).
As the facts relevant to all of the claims are similar, the Board will discuss them together. 

Service treatment records indicate that the Veteran injured his left ankle in August 1959. He was examined and x-rayed and was found to have no fracture. Supportive therapy, soaks, and an ace bandage were introduced. In October 1959, the Veteran complained of pain in the left ankle and reported that the swelling had never subsided from the August injury. He ultimately admitted that he had reinjured the ankle when falling down a ladder. He was given a provisional diagnosis of left ankle sprain.

Service treatment records indicate that in July 1961, the Veteran fell from the conning tower to the well deck and was treated for a skull injury and an injury to the left temple. He was hospitalized and monitored closely. He did not demonstrate any physical symptoms with the exception of dizziness on ambulation. He was declared fit for duty and discharged from the hospital in August 1961.

No disabilities were reported on the Veteran's January 1962 separation examination, including any ankle, back, knee or foot disabilities. The Veteran underwent an enlistment examination for the Reserves in December 1966. He did not report, nor were any injuries or pain noted. 

In an undated letter, Dr. S.M. states that the Veteran had been treated for knee and ankle pain since the 1980s. He further states that the Veteran reported that he injured his ankle in 1959 and was put on crutches and light duty. He also states that the Veteran reported that he was unsure how he fell in 1961, but believes it may be related to the Veteran's previous ankle injury. 

In an October 2010 VA Form 21-4138, the Veteran stated that about 3 months after his discharge from service, he experienced numbness in his right hand and arm and was later told he had a bruised nerve that the Veteran attributed to the August 1961 fall.

In another October 2010 correspondence, the Veteran's wife stated that the Veteran was told that his knees and ankle problems were the result of the accident in 1961. 

The Veteran was afforded a VA examination in March 2012 where the examiner noted that the Veteran had bilateral DJD with arthroplasty (twice on the left), degenerative disc disease of the lumbar spine, DJD of the bilateral knees and DJD of the right shoulder. She also noted that the Veteran did not have a foot disability. The Veteran reported that he was told around 1964 that he had hairline cracks in all of the bones in his feet. He reported that his feet were taped by a doctor twice a week for 2 months. He stated that in 1983 he developed foot pain and was prescribed orthotics, which resolved the pain. The Veteran also reported that in 1981, he was seen for knee pain and had an arthroscope for debridement of the left knee. He had total arthroscopy of the left knee in 1994 and right knee total arthroplasty in 1997. The examiner noted the Veteran's in-service fall with skull fracture, but no fractures to the ankles, back, or knees. The examiner noted that in 1999, the Veteran was diagnosed with DJD of both ankles and surgical arthroplasty of the ankles a few years later. 

The examiner opined that it was less likely than not that the Veteran's bilateral ankles, back, bilateral knees, and bilateral feet disabilities were incurred in or related to service. The examiner reasoned that the Veteran's service treatment records did not reflect any disabilities related to the instant claims as a result of the 1961 fall, and the Veteran's 1959 left ankle injury did not reveal any long term disability. 

In an addendum opinion in October 2012, the clinician opined that it was less likely as not that the Veteran's current left ankle condition was related to the in-service left ankle treatment. The clinician noted the Veteran's August 1959 injury and October 1969 left ankle complaint, with no evidence of a fracture either time. 

In a March 2016 medical opinion, the clinician opined that the Veteran's left ankle disability was less likely than not incurred in or caused by service. The clinician noted the Veteran's service treatment record; his post-service history of surgeries and March 2012 examination report. The clinician reasoned that it was unlikely that the Veteran had an in-service injury that would lead to the DJD diagnosis and subsequent surgery. The clinician stated that the Veteran's in-service sprained left ankle healed with no evidence of a chronic/ongoing condition and it is unlikely that the previous strain led to arthritis of the joint since a sprain is a ligament injury and not a joint injury. 

Based on the foregoing, the Board finds that service connection for a bilateral ankle disability, back disability, bilateral knee disability and bilateral foot disability are not warranted on a direct or secondary basis. Although there is evidence of current disabilities, with the exception of the in-service left ankle injury, there is no evidence of in-service injuries to the Veteran's remaining disabilities. 

The Veteran has claimed he was issued crutches following his 1961 fall; however, the service treatment records do not support this assertion. It is reasonable to infer that all of the Veteran's ailments associated with his 1961 injury were included in the transcribed treatment notes. Any absence of evidence of care, including something significant as the issuance of crutches, is more likely than not evidence against the Veteran's claims. 

The March 2012, October 2012 and March 2016 clinicians provided evidence against the Veteran's claims. The Board finds the March 2012 VA examination report and October 2012 and March 2016 medical opinions to be of significant probative value. The March 2012 examiner provided a reasoned opinion based on a complete review of the Veteran's history, interview and examination. Also, the October 2012 and March 2016 clinicians directly addressed the potentially opposing medical evidence. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000) (holding that among the factors for assessing the probative value of a medical opinion are the examiner's access to the claims file and the thoroughness and detail of the opinion). As such, the Board is satisfied that the VA clinicians duly considered all salient evidence, both clinical and lay. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302 (2008) (noting that greater reliance may be placed on an opinion rendered by an examiner who is fully informed of the pertinent factual premises (i.e., history) of the appeal). The March 2012 examiner and March 2016 clinician addressed the Veteran's complaints, but found that the Veteran's claimed disabilities, including a left ankle disability, were not related to service. 

In order to prevail on the theory of secondary service connection, there must be evidence of a current disability; evidence of a service-connected disability; and medical nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

However, as discussed above, the Board has found herein that the Veteran is not entitled to service connection for a left ankle disability. Thus, there is no service-connected disability to form the basis for secondary service connection for the remaining disabilities. Accordingly, service connection for those disabilities is not warranted on a secondary basis.

The Board further finds that presumptive service connection is not warranted because the evidence does not show that he has a diagnosis of arthritis becoming manifest to a degree of 10 percent of more within one year from the date of separation. The first documented diagnosis of arthritis did not occur until approximately 1999- more than 30 years after his 1962 separation from service. 

Regarding continuity of symptomatology, although the Veteran has asserted that his ankle pain began in service, it is noted that the Veteran's ankle was normal at the time of his separation examination and the Veteran did not report any ankle pain at that time or even at his 1966 Reserves examination. The Board has weighed the Veteran's statements as to continuity of symptomatology and finds that his current recollections and statements made in connection with a claim for VA compensation benefits are of lesser probative value than the previous more contemporaneous findings at service separation. For these reasons, the Board finds that the weight of the lay and medical evidence is against a finding of continuity of symptoms since service separation.

To the extent that the Veteran has provided his own nexus opinion, relating his disabilities to his service, the Board finds that he is not competent to render such an opinion in this matter. Degenerative changes are not observable by lay people, like varicose veins or a broken arm. Therefore, the question of etiology of such changes requires a medical determination.

The Board acknowledges the Veteran's citation to an internet article on arthritis of the foot and ankle. The article has been reviewed but is too general in nature to provide, alone, the necessary evidence to show that the Veteran's foot or ankle disabilities are related to service. See Sacks v. West, 11 Vet. App. 314, 316-17 (1998). The medical treatise, textbook, or article must provide more than speculative, generic statements relevant to the claim but must discuss generic relationships with a degree of certainty for the facts of a specific case. See Wallin v. West, 11 Vet. App. 509, 514 (1998). The article in the current case does not address the facts of this specific case and thus is not entitled to any probative weight.

Although the Veteran and his wife both stated that they were previously told by doctors that the Veteran's disabilities were related to service, to date, the Veteran has not provided any medical opinion which supports this conclusion. Dr. S.M.'s letter alludes to the Veteran's in-service injury and post-service diagnoses, but does not tie them together. Further, Dr. S.M.'s letter appears to repeat the Veteran's reports of injuries rather than base any statements on review of the Veteran's claims file, or even his service treatment records. 

Based on the above, the Board finds that the preponderance of the evidence is against the claims. The most probative evidence are the VA medical opinions which do not support the Veteran's claims. The claims for entitlement to service connection for a bilateral ankle disability, a back disability, a bilateral knee disability and a bilateral foot disability must be denied. There is no reasonable doubt to be resolved. See 38 U.S.C.A. § 5107(b) (West 2014); 38 C.F.R. § 3.102 (2015); Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

 

ORDER

Entitlement to service connection for a left ankle disability, to include DJD and amputation of the foot, is denied.

Entitlement to service connection for a low back disability, to include DJD with radiculopathy and to include as secondary to a left ankle disability, is denied.

Entitlement to service connection for a left knee disability, to include DJD with total knee replacement and to include as secondary to a left ankle disability, is denied.

Entitlement to service connection for a right knee disability, to include DJD with total knee replacement and to include as secondary to a left ankle disability, is denied.

Entitlement to service connection for a right ankle disability, to include DJD and to include as secondary to a left ankle disability, is denied.

Entitlement to service connection for a left foot disability, to include as secondary to a left ankle disability, is denied.

Entitlement to service connection for a right foot disability, to include as secondary to a left ankle disability, is denied.

____________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs