Citation Nr: 1829620 
Decision Date: 06/25/18 Archive Date: 07/02/18

DOCKET NO. 11-00 898 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUE

Entitlement to service connection for malignant melanomas, to include as due to ionizing radiation.


REPRESENTATION

The Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

I. M. Hitchcock, Associate Counsel 


INTRODUCTION

The Veteran served honorably on active duty from May 1980 to October 1989; and from December 2001 to November 2003. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee.

In April 2013, the Veteran testified at a hearing in VA's Central Office in Washington, D.C., before a Veteran's Law Judge (VLJ). A transcript of this hearing has been associated with the claims file. 

The law requires that the VLJ who conducts a hearing on an appeal must participate in any decision made on that appeal. 38 U.S.C. § 7107(c) (2012); 38 C.F.R. § 20.707 (2017). The Veteran was informed that the VLJ who conducted his hearing was no longer employed by the Board. As that VLJ was no longer available, the appeal was reassigned to the undersigned VLJ for a decision. 38 C.F.R. § 19.3(b). The Veteran had the right to request another optional Board hearing. In October 2017, the Veteran elected the option to have a second hearing. The Veteran's hearing was scheduled for January 2018, but he requested to have it postponed in December 2017. After the hearing, a VLJ ruled that the requested reason to postpone was not sufficiently good cause for the Veteran's failure to appear at the scheduled hearing. The Veteran's claim is now before the Board for a decision. 

The case was brought before the Board in November 2013 at which time the claim was remanded to allow the Agency of Original Jurisdiction (AOJ) to further assist the Veteran in the development of the claim. The AOJ substantially complied with the remand order and, therefore, no additional remand is necessary. See Stegall v. West, 11 Vet. App. 268 (1998); D'Aries v. Peake, 22 Vet. App. 97 (2008).




FINDING OF FACT

The Veteran's malignant melanomas are not related to service, including as a result of exposure to ionizing radiation.


CONCLUSION OF LAW

The criteria for service connection for malignant melanomas have not been met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.311 (2017). 


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran contends that his malignant melanomas were caused by exposure to ionizing radiation in service. 

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. 
§ 3.303(a). Service connection may also be granted for any disease diagnosed after discharge, when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Direct service connection may not be granted without evidence of a current disability; in-service incurrence or aggravation of a disease or injury; and a nexus between the claimed in-service disease or injury and the present disease or injury. Id.; Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

VA regulations also provide for service connection for radiation exposed veterans on a presumptive basis for diseases specific to radiation exposed veterans under 38 C.F.R. § 3.309(d) and based on exposure to ionizing radiation with the subsequent development of a radiogenic disease as provided in 38 C.F.R. § 3.311. 

In general, service connection for a disability claimed to be attributable to ionizing radiation exposure during service, may be established in one of three ways. First, VA has identified certain diseases which are presumed to be the result of radiation exposure. That presumption must be based upon a finding that the Veteran was exposed to radiation. 38 U.S.C. § 1112(c); 38 C.F.R. § 3.309(d). Second, there are other radiogenic diseases which may be service connected directly. 38 C.F.R. § 3.311 (b)(2)(i). The list of radiogenic diseases, however, is not exclusive. The Veteran may provide competent scientific or medical evidence that the disease claimed to be the result of radiation exposure is a radiogenic disease. 38 C.F.R. § 3.311(b)(4). Third, even if the disease in question, like malignant melanoma, is not listed in 38 C.F.R. § 3.309 or is not a radiogenic disease under 38 C.F.R. § 3.311, the Veteran is not foreclosed from proving direct service connection by establishing direct actual causation. 38 U.S.C. § 1110; 38 C.F.R. § 3.303; Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the Veteran. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

The Veteran has a diagnosis of malignant melanomas and he was exposed to ionizing radiation while in service. Therefore, the first two elements of service connection are met. Shedden, supra. However, in considering the evidence of record and the applicable laws and regulations, the Board concludes that the Veteran is not entitled to service connection for malignant melanomas because there is no nexus connecting his disease to service.

The most recent remand in November 2013 requested a radiation dose estimate and a corresponding medical opinion based on that estimate. The Board notes that there was an earlier dose estimate and opinion about connection to radiation that are contained in the record. However, the Veteran contested the accuracy of these measurements. Specifically, the Veteran stated that based on his personal observations of the conditions, the radiation readings must have been incorrect.

In February 2015, a radiation dose estimate was obtained from the Army Institute of Public Health. The Board notes that this estimate is thorough in its analysis. The estimate considered the Veteran's exposure to radiation by reviewing radiation dosimetry records (direct radiation) and bioassay results (indirect radiation). Analyzed over the course of the Veteran's service, the Veteran's exposure was estimated not to exceed .037 rem. In the calculation of the dose estimate, the opinion considered the Veteran's contention that the temperatures he was exposed to caused incorrect radiation readings, but the opinion found the readings to be accurate. Further, the opinion considered the bioassay results collected in 2003.

Thereafter, in May 2017, a medical opinion was obtained from the Director, Post-911 Era Environmental Health Program, who indicated that given the dose estimate, it is unlikely that the Veteran's malignant melanomas can be attributed to ionizing radiation while in service. The Director considered the Veteran's radiation dose estimate and provided a thorough rationale to support his conclusion. In essence, handling uranium can cause alpha particles to be ingested or inhaled, but these particles do not contribute to external dose equivalents. Further, the Veteran's exposure was estimated to not exceed 10 rem above his natural background-the exposure of all sources of radiation over a lifetime. 

Ultimately, the Director found that because the Veteran's exposure was .037 rem, it is unlikely that the Veteran's malignant melanomas were caused by exposure to ionizing radiation during military service. 

In comparing the opinion of the Director and the analysis of the Veteran's radiation exposure, the Director of Compensation Services found that there was no reasonable possibility that the Veteran's necrosis was the result of exposure to ionizing radiation during service. See 38 C.F.R. § 3.311(c)(1)(ii).

The Veteran's malignant melanomas are specifically claimed as secondary to exposure to ionizing radiation. Therefore, the Board finds that consideration of the Veteran's dose estimate is a significant priority for any etiological opinion regarding the issue on appeal. VA has obtained a dose estimate for the Veteran and that estimate was considered by the Director of the Post-911 Era Environmental Health Program. In the absence of any competent and specific evidence to the contrary, the Board finds that the Veteran was exposed to no greater than .037 rem of ionizing radiation during service. Therefore, the Board finds that any medical or specialist opinion which does not take into account the Veteran's dose estimate and explain the opinion based on that dose estimate warrants significantly reduced probative weight. As such, the Board finds the Director's opinion to be the most probative evidence of record and, therefore, service connection for malignant melanomas based on exposure to ionizing radiation is not warranted. 

The file also contains articles that assert, in general, that the Veteran's malignant melanomas are due to his exposure to ionizing radiation. The Board notes that medical treatise evidence can, in some circumstances, constitute competent medical evidence. See 38 C.F.R. § 3.159 (a)(1) (competent medical evidence may include statements contained in authoritative writings such as medical and scientific articles and research reports and analyses).

However, treatise evidence must not simply provide speculative generic statements that are not relevant to the Veteran's claim. Wallin v. West, 11 Vet. App. 509, 514 (1998). Instead, the treatise evidence, "standing alone," must discuss generic relationships with a degree of certainty "such that, under the facts of a specific case, there is at least plausible causality based upon objective facts rather than on an unsubstantiated lay medical opinion." Id., (citing Sacks v. West, 11 Vet. App. 314, 317 (1998)); see also Beausoleil v. Brown, 8 Vet. App. 459, 463 (1996) (generic statement about the possibility of a link between chest trauma and restrictive lung disease is too general and inconclusive); Mattern v. West, 12 Vet. App. 222, 227 (1999) (generally, an attempt to establish a medical nexus to a disease or injury solely by generic information in a medical journal or treatise is too general and inconclusive (quoting Sacks, supra)). 

In this case, the various articles submitted by the Veteran only provide general information as to a link between radiation exposure and various disorders. It is not accompanied by any corresponding clinical evidence specific to the Veteran; nor does it suggest a generic relationship between exposure to ionizing radiation and resulting medical conditions with a degree of certainty such that, under the facts of this specific case, reflects plausible causality based upon objective facts, rather than on an unsubstantiated lay medical opinion. Further, it does not consider a dose estimate similar to the estimate for the Veteran's service.

As such, the Board affords no probative weight to these treatises on the question of etiology. See Wallin, supra; Sacks, supra.

Having discussed whether service connection was warranted on an indirect basis, the Board will consider whether service connection is warranted for malignant melanomas on a direct basis. The Board finds that the competent evidence does not show a relationship between the Veteran's malignant melanomas and his period of active service. The Veteran does not contend that his malignant melanomas were directly related to active duty service. Moreover, the evidence of record does not indicate that the Veteran's malignant melanomas are directly related to a period of service. Hence, the Board finds that the competent evidence of record does not reveal a relationship of malignant melanomas and the Veteran's period of service, including exposure to radiation. The Veteran has not submitted any competent evidence which provides a basis for the conclusion that his disorder of malignant melanomas is related to his period of service.

Although the Veteran contends that his malignant melanomas are related to his active service, specifically to exposure to ionizing radiation in service, the Veteran's opinion is not competent to provide the requisite etiology of the malignant melanomas because such a determination requires medical expertise. As a lay person, the Veteran is considered competent to report what comes to him through his senses, but he lacks the medical training and expertise to provide a complex medical opinion as to the etiology of malignant melanomas. See Layno v. Brown, 6 Vet. App. 465 (1994); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). In Jandreau, the Federal Circuit specifically determined that a lay person is not considered competent to testify when the issue was medically complex, as with malignant melanomas. As such, the Veteran's opinion on its own is insufficient to provide the requisite nexus between malignant melanomas and his military service. 

Therefore, the Veteran's lay statements regarding his malignant melanomas being related to service and his exposure to ionizing radiation in service are not competent as the Veteran is not medically qualified to provide evidence regarding matters requiring medical expertise, such as an opinion as to etiology. 

Accordingly, the Board finds that the preponderance of the evidence is against the claim for service connection for malignant melanomas and the claim is denied.
In reaching this decision, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable in the instant appeal, and the claim must be denied. 38 U.S.C. § 5107 ; 38 C.F.R. § 3.102 ; Gilbert, supra.


ORDER

Service connection for malignant melanomas is denied.



____________________________________________
R. FEINBERG 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs