﻿Citation Nr: 18124199
Decision Date: 08/06/18 Archive Date: 08/06/18

DOCKET NO. 15-26 360
DATE: August 6, 2018
ORDER
Entitlement to service connection for type II diabetes mellitus is granted.
Entitlement to service connection for angina is granted.
Entitlement to service connection for neurogenic bladder secondary to service-connected lumbar degenerative disc disease (DDD) is granted.
Entitlement to service connection for coronary artery disease (CAD) secondary to service-connected type II diabetes mellitus is granted.
FINDINGS OF FACT
1. The evidence is at least evenly balanced as to whether the Veteran’s type II diabetes mellitus is at least as likely as not related to his military service.
2. The evidence is at least evenly balanced as to whether the Veteran’s angina is at least as likely as not related to his military service
3. The evidence is at least evenly balanced as to whether the Veteran’s DDD caused his neurogenic bladder.
4. The evidence is at least evenly balanced as to whether the Veteran’s type II diabetes mellitus caused his CAD.
CONCLUSIONS OF LAW
1. With reasonable doubt resolved in favor of the Veteran, the criteria for service connection for type II diabetes mellitus are met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).
2. With reasonable doubt resolved in favor of the Veteran, the criteria for service connection for angina are met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).
3. With reasonable doubt resolved in favor of the Veteran, the criteria for service connection for neurogenic bladder have been met on a secondary basis. 38 U.S.C. §§ 1110, 1131, 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2017).
4. With reasonable doubt resolved in favor of the Veteran, the criteria for service connection for CAD have been met on a secondary basis. 38 U.S.C. §§ 1110, 1131, 5103A, 5107(b) (2012); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2017).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty with the United States Navy from October 1984 to November 1994.
This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a January 2010 rating decision which, inter alia, denied service connection for atypical chest pain (new onset angina), CAD, diabetes mellitus, and neurogenic bladder secondary to low back injury. The Veteran timely filed a notice of disagreement (NOD) to the decisions above and a substantive appeal, via a VA Form 9. 
Service Connection
Service connection will be granted if the evidence demonstrates that current disability resulted from a disease or injury incurred in active military service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) current disability; (2) in-service incurrence of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Saunders v. Wilkie, 886 F.3d 1356, 1361 (Fed. Cir. 2018). Consistent with this framework, service connection is warranted for a disease first diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).
Service connection may also be granted for a disability which is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a).
1. Entitlement to service connection for type II diabetes mellitus 
The Veteran contends that his type II diabetes mellitus is related to service. 
Service treatment records (STRs) reflect that laboratory reports from July 1991 record a glucose level of 209; from September 1992 record a glucose level of 93; from January 11, 1994 record a glucose level of 109; from January 18, 1994 reflect a glucose level of 104; from February 1994 record a glucose level of 175; from March 3, 1994 record a glucose level of 165; and from March 7, 1994 record a glucose level of 165. The Veteran was not diagnosed with type II diabetes mellitus in service. 
Post service, April 2009 private treatment records reflect a diagnosis of diabetes. VA treatment records reflect continued treatment for type II diabetes mellitus. 
In a July 2015 letter, the Veteran’s private physician, Dr. J.M., noted the laboratory glucose findings from 1991 to 1994 in service. He opined that it was more likely than not that the Veteran’s type II diabetes mellitus was “consequential with his active duty service.” As rationale, he referenced the five elevated blood glucose levels that occurred while on active duty service. He reported that it is an accepted medical principle that patients with type II diabetes mellitus are often asymptomatic and a risk breakdown structure (RBS) of greater than 200 mg/dL or fasting blood sugar (FBS) greater than 126 mg/dL when confirmed at least once is indicative of type II diabetes mellitus. 
An April 2016 medical opinion by a VA physician reflects that the physician found that the cardinal signs and symptoms of diabetes mellitus are less likely as not present during service. As rationale, he reported that increased thirst, frequent urination, and extreme hunger due to high serum glucose levels are among the classic/cardinal symptoms of type II diabetes mellitus. He noted that less classic symptoms of dry skin, blurry vision, unexplained weight loss, and fatigue are also not noted in the STRs. He also noted that physical signs of type II diabetes mellitus include acanthosis nigricans, peripheral neuropathy, cataracts, and other physical complications. He concluded that he did not find these in the STRs, and that the history of frequent or painful urination noted in an April 1993 medical treatment note appeared to be related to a prior diagnosis of prostatitis. Finally, the physician included medical references in support of his claim.
In an April 2016 addendum medical opinion report, the VA physician reported that he agreed with Dr. J.M. that if the Veteran had two FBS’s over 125 mg/dL, this would qualify for a diagnosis of type II diabetes mellitus. He reported that if the Veteran were receiving drugs, such as corticosteroids, which artificially elevate glucose levels or if he had intravenous fluids containing glucose or similar artificial reasons for glucose elevation during the times of glucose determination, then the diagnosis would be in question. He stated that the blood sugar determinations in question (as noted by Dr. J.M.) were not labeled as fasting and were drawn after the morning hours (when most people would have had food or liquids containing calories). He stated that if RBS is over 200 accompanied by classic symptoms of type II diabetes mellitus, then the diagnostic criteria are also met. He concluded that, since the elevated glucose values were not documented to be fasting and since classic symptoms of type II diabetes mellitus were not documented, the criteria for a diagnosis of type II diabetes mellitus were not met.
The Veteran submitted numerous articles which discussed the correlation between elevated blood sugar levels, prediabetes, and the likelihood of developing type II diabetes mellitus. 
Upon review of the evidence of record, the Board finds that service connection for type II diabetes mellitus is warranted.
Initially, the Board finds that the Veteran has a current diagnosis of type II diabetes mellitus as continually reflected in his private and VA treatment records. Therefore, the Veteran has met the current disability requirement. 
There are conflicting medical opinions as to whether there exists a nexus between the Veteran’s type II diabetes mellitus and his active duty military service. The July 2015 medical from Dr. J.M. reflects a relationship between the Veteran’s laboratory glucose reports and the Veteran’s diagnosis of type II diabetes mellitus. Dr. J.M.’s explained the reasons for his conclusion based on an accurate characterization of the evidence of record. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (most of the probative value of a medical opinion comes from its reasoning; threshold considerations are whether the person opining is suitably qualified and sufficiently informed). Thus, the Board finds this opinion to be probative. Moreover, the medical journal articles submitted by the Veteran supports the Veteran’s theory of entitlement. See Sacks v. West, 11 Vet. App. 314, 317 (1998) (medical article and treatise evidence “can provide important support when combined with an opinion of a medical professional).
The Board recognizes that there is a negative nexus opinion as to the etiology of the Veteran’s type II diabetes mellitus. However, the Board finds the specific, reasoned positive medical opinion from Dr. J.M. to be of at least equal probative weight. Given the adequate positive medical nexus opinion as well as the supporting medical literature, the evidence is at least evenly balanced as to whether the Veteran’s type II diabetes mellitus is related to his in-service glucose levels. As the reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran, entitlement to service connection for type II diabetes mellitus is warranted. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.
2. Entitlement to service connection for angina
The Veteran contends that his angina is related to service.
STRs reflect multiple reports of chest pain; however, testing did not reveal a heart disability. 
Post service, VA treatment records from 2008 reflect that the Veteran reported a history of chest pain on and off for 20 years. Private treatment records as early as 2009 reflect a history of angina. Medical treatment records reflect continued treatment for the Veteran’s angina. 
During an April 2009 VA examination, the Veteran reported that he developed chest pain in 1990. Medical studies performed in 1990 were negative for CAD. During the examination, the Veteran was diagnosed with atypical chest pain. The examiner found that the angina was clearly identified in the Veteran and based on all available data, it is at least as likely as not that atypical chest pain is secondary to service duty with no prior history. 
A March 2015 VA examination report reflects that the physician found that there was no evidence that the Veteran’s anginal syndrome or cardiac syndrome started in service. As rationale, the physician reported that there was no basis of medical fact in support of the claim. He reported that the medical record did not support such a diagnosis. Additionally, the physician found that there was no evidence that he had atypical chest pain which started in service. As rationale, the physician reported that in service, several different presentations of atypical chest pain were described and he found that none of which were attributed to a cardiac etiology. Additionally, he found that none of the presentations of atypical chest pain are attributed to a chronic condition affecting the musculoskeletal system. He concluded that the Veteran’s current chest pains were attributed by his treating physicians to CAD. He reported that there was no evidence that the Veteran had CAD in service.
A July 2015 letter from Dr. J.M. reflects that he found that the Veteran’s atypical chest pain (new onset angina) is secondary to his diagnosed type II diabetes mellitus. He noted that the commonly approved standard to rule out angina pectoris is a coronary angiogram which was never ordered or performed in service. He found that early cases of CAD, in most cases, manifest itself as new onset angina or atypical chest pain. 
Upon review of the evidence of record, the Board finds that service connection for angina is warranted.
Initially, the Board finds that the Veteran has a current diagnosis of angina as reflected in the April 2009 VA examination report and subsequent medical treatment records. Therefore, the Veteran has met the current disability requirement.
While there are numerous conflicting medical opinions as to the etiology of the Veteran’s angina, including a probative opinion from Dr. J.M., the Board finds the specific, reasoned positive medical opinion from the April 2009 VA examiner to be of greater probative weight. The April 2009 VA examiner’s positive medical opinion explained the reasons for its conclusions based on an accurate characterization of the evidence of record. See Nieves-Rodriguez, 22 Vet. App. at 304. The March 2015 VA medical opinion first reported that there was no evidence of atypical chest pain and later reported that the atypical chest pain described were not attributed to a cardiac etiology. He did not provide a rationale for this contradictory and conclusory statement. Therefore, the Board finds this opinion of little, if any, probative weight.
For the foregoing reasons, the evidence is at least evenly balanced as to whether the Veteran’s angina is related to his in-service atypical chest pain. As the reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran, entitlement to service connection for angina is warranted. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.
3. Entitlement to service connection for neurogenic bladder secondary to service-connected DDD
The Veteran contends that his neurogenic bladder is secondary to his service-connected back disability. 
STRs do not reflect complaint, treatment, or a diagnosis of a bladder disability.
Post service, VA treatment records from 1996 reflect that the Veteran complained of bladder and bowel incontinences for about one to two years and was subsequently diagnosed with neurogenic bladder. A 2006 urology treatment note attributed the Veteran’s bladder disability to his service-connected back disability.
An October 2009 VA neurological examination from Dr. D.E.L. reflects that the examiner identified that the Veteran had been experiencing urinary incontinence since about 1994 and has a diagnosis of neurogenic bladder. He found that the etiology of the neurogenic bladder has not been very clear-cut. He explained that the central canal stenosis found on imaging was very mild to cause this extent of symptoms (including bowel and bladder symptoms). Additionally, he reported that he did not have very typical examination findings consistent with radiculopathy where one would expect to see more symptoms of radiculopathy. He reported that in his case with mild lumbar canal narrowing, the neurogenic bladder seemed out of proportion to the degree of stenosis. He reported that other providers have not provided a clear etiology of the Veteran’s bladder disability as some have attributed it to diabetes and then to his disc herniation. He concluded that based on his examination and imaging findings, it is his opinion that it is less likely as not (less than 50/50 probability) that the Veteran’s neurogenic bladder is a result of the service-connected DDD. He reported that his symptom of neurogenic bladder is most likely a complication of his diabetes. 
A separate October 2009 VA examination report from Dr. L.S. notes the Veteran’s diagnosis of neurogenic bladder and the Veteran reported that he was diagnosed in 1996 or 1997. The examiner referenced the 2006 urology treatment note that clearly identified that neurogenic bladder was at least as likely as not secondary to DDD. She reported that there had been no change in the Veteran’s status and she concurred with the urology conclusion at that time. Therefore, she found that it was at least as likely as not that neurogenic bladder was secondary to service-connected DDD.
A July 2015 medical opinion from Dr. J.M. reflects that he found it was more likely than not that his neurogenic bladder was a secondary complication of type II diabetes mellitus. 
Upon review of the evidence of record, the Board finds that service connection for neurogenic bladder as secondary to his service-connected lumbar DDD is warranted.
At the outset, the Board notes that the Veteran does not contend, and the evidence does not suggest, that his neurogenic bladder is related to service. Rather, in his July 2009 application for compensation and thereafter, the Veteran has specifically contended that his bladder disability is due to his service-connected back disability. 
While there are numerous conflicting medical opinions as to the etiology of the Veteran’s bladder disability, including a positive probative opinion from Dr. J.M., the Board finds the specific, reasoned positive medical opinion from Dr. L.S. in October 2009 to be of greater probative weight. Dr. L.S. explained the reasons for his conclusions based on an accurate characterization of the evidence of record. Thus, the evidence is at least evenly balanced as to whether the Veteran’s neurogenic bladder is related to his service-connected lumbar DDD. As the reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran, entitlement to service connection for neurogenic bladder on a secondary basis is warranted. 38 U.S.C. § 5107 (b); 38 C.F.R. § 3.102.
4. Entitlement to service connection for CAD secondary to service-connected type II diabetes mellitus
The Veteran contends that his CAD is secondary to his now service-connected type II diabetes mellitus.
STRs do not reflect diagnosis or treatment for CAD. However, the Veteran complained of chest pain. 
Post service, private medical treatment records reflect a diagnosis of CAD in 2009 following a coronary angiogram. 
An October 2009 VA examination report reflects that the Veteran reported that he developed chest pain in 1990 and he had no diagnosis of CAD until an angiogram in 2009. The examiner reported that studies performed in 1990 were negative for CAD and the Veteran continued to have chest pain. The examiner found that the Veteran did not have a diagnosis of CAD, but had a diagnosis of angina.
In 2013, medical treatment records reflect that the Veteran underwent a quadruple coronary bypass. He was diagnosed with CAD. 
An April 2015 Disability Benefits Questionnaire (DBQ) report reflects a diagnosis of CAD from January 2013. The examiner noted the Veteran’s 2009 diagnosis of CAD. The Veteran reported chest pain since 1991 that increased between 1994 and 2005. The examiner found that the claimed condition is less likely than not (less than 50 percent probability) proximately due to or the result of the Veteran’s service-connected condition. As rationale, the examiner reported that medical literature indicates that there is less than a strong correlation between hypertension and CAD. 
A July 2015 medical opinion from Dr. J.M. found that it is more likely than not that the Veteran’s CAD was a secondary complication of type II diabetes mellitus. 
The Veteran submitted an article discussing the relationship between type II diabetes mellitus and cardiovascular disease where the article reported that type II diabetes is the strongest risk factor for cardiovascular disease. 
Upon review of the evidence of record, the Board finds that service connection for CAD, on a secondary basis, is warranted.
At the outset, the Board notes that the Veteran does not contend, and the evidence does not suggest, that his CAD is related to service. While the Veteran complained of chest pain in service, this has been attributed to his now service-connected angina and the record reflects the earliest diagnosis of CAD in 2009.
There are conflicting medical opinions regarding a nexus between the Veteran’s CAD and his service-connected type II diabetes mellitus; each opinion is flawed as they did not provide significant rationales based on an accurate characterization of the evidence of record and relevant medical literature. 
Significantly, the October 2009 and April 2015 VA examiners did not fully take into consideration all of the medical evidence of record. Specifically, the October 2009 VA examiner did not find a diagnosis of CAD although the Veteran was diagnosed in 2009. While the April 2015 examiner acknowledged the 2009 diagnosis, he provided a conclusory opinion based on medical literature that he did not include as part of his rationale. He did not address whether there was a relationship between the Veteran’s CAD and diabetes mellitus; rather, he only offered an opinion as to whether the Veteran’s CAD was related to his service-connected hypertension. To be adequate, an examination must take into account an accurate history. Nieves-Rodriguez, supra. The October 2009 and April 2015 examiners based their opinions without full consideration of the Veteran’s medical history, even though they noted that the claims file was made available for their review. Thus, the opinions are inadequate. 
Although Dr. J.M.’s rationale was not extensive, reading his opinion as a whole and in context of the evidence of record, including his familiarity with all of the Veteran’s disabilities, the Board finds that his positive opinion is entitled to some probative weight. See Monzingo v. Shinseki, 26 Vet. App. 97, 106 (2012) (the fact that the rationale provided by an examiner “did not explicitly lay out the examiner’s journey from the facts to a conclusion,” did not render the examination inadequate); Acevedo v. Shinseki, 25 Vet. App. 286, 294 (2012) (medical reports must be read as a whole and in the context of the evidence of record). Moreover, the medical journal articles submitted by the Veteran supports the Veteran’s theory of entitlement. See Sacks, 11 Vet. App. at 317 (medical article and treatise evidence “can provide important support when combined with an opinion of a medical professional).
For the above reasons, the evidence is at least evenly balanced as to whether the Veteran’s current CAD is caused by his service-connected type II diabetes mellitus. As the reasonable doubt created by this relative equipoise in the evidence must be resolved in favor of the Veteran, entitlement to service connection for CAD on a secondary basis is warranted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.
 

 
Jonathan Hager
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD N. Laroche, Associate Counsel